**AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Respondent,**

v.

**M.B., et al., Appellants,**

**Le Terra International Model
Management, et al.,
Defendants.**

No. C9–96–2229.

Court of Appeals of Minnesota.

May 20, 1997.

Review Denied July 28, 1997.

Stephen W. Cooper, Kathryn J. Cima, The Cooper Law Firm, Minneapolis, for Appellants.

Scott P. Drawe, Louise A. Behrendt, Stich, Angell, Kreidler, Brownson & Ballou, P.A., Minneapolis, for Respondent.

Considered and decided by HUSPENI, P.J., and PARKER and SCHUMACHER, JJ.

## OPINION

HUSPENI, Judge.

A jury in the underlying action found Le Terra, Inc. liable to appellants M.B. and Mi.B. for compensatory and punitive damages. Le Terra's insurer, respondent American Family Mutual Insurance Company, then brought this action against Le Terra, M.B., Mi.B., et al., seeking a declaratory judgment that the "expected injury" exclusion in its policy applied to Le Terra's conduct. M.B. and Mi.B. also moved for summary judgment. The district court granted American Family a declaratory judgment. We conclude as a matter of law that the "expected injuries" exclusion in the insurance policy applied to the conduct that injured appellants. Further, we see no abuse of discretion in the district court's declaration that the exclusion applied to a jury finding that the conduct was in deliberate disregard for appellants' safety. We therefore affirm.

## FACTS

Le Terra, Inc. was in the business of helping models promote themselves. Its president and CEO was Susan Gurler; she was also president and CEO of Prima Fotographia, Inc., which employed Aldo Palmieri to photograph the models. The businesses shared space leased in Palmieri's name.

Appellants M.B. and Mi.B., aspiring models, sought the help of Le Terra in furthering their careers. Between November 1991 and July 1992, both women were sexually ha-

rassed and assaulted by Palmieri during photography sessions.

In February 1992, Le Terra obtained a business owners' general liability insurance policy from respondent American Family. The policy listed Le Terra as the sole named insured and provided in relevant part:

1. **Insuring Agreement.** We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. We will have the right and duty to defend any suit seeking those damages. We may at our discretion investigate the circumstances of a possible or actual occurrence and settle any claim or suit that may result.

\* \* \* \*

2. **Exclusions.** This insurance does not apply to:

a. INTENTIONAL INJURY. We will not pay for damages due to bodily or property damage:

(1) expected or intended from the standpoint of the insured.

M.B. and Mi.B. sued Palmieri, Le Terra, Prima Fotographia, and Rare Models, Inc., another of Gurler's corporations involved in the business. American Family, pursuant to its policy, hired defense counsel for Le Terra. Palmieri absconded; Prima Fotographia and Rare Models admitted liability. The questions of Le Terra's liability and damages were submitted to the jury following trial. The jury found with respect to M.B. that Le Terra was 78 percent negligent, that M.B. was 22 percent negligent, and that her damages were $175,000 to the time of trial and $40,000 in the future; with respect to Mi.B., it found that Le Terra was 85 percent negligent, that Mi.B. was 15 percent negligent, and that her damages were $200,000 to the time of trial and $60,000 in the future. The punitive damages issue was submitted separately to the same jury, which found that Le Terra had acted "with deliberate disregard for the safety" of M.B. and Mi.B. and awarded each of them $50,000 in punitive damages.

American Family then brought this action and obtained a declaratory judgment that the "expected injury" exclusion in its policy applied to Le Terra's conduct.

## ISSUES

1. Does the "expected injury" exclusion of the insurance policy apply to appellants' injuries?

2. Did the district court in a declaratory judgment action abuse its discretion by relying on the jury's finding in an underlying action that certain conduct was in deliberate disregard to the rights and safety of others when the court declared that because the expected injuries exclusion applied to that conduct, the insured was denied coverage?

## ANALYSIS

"Insurance coverage issues are questions of law for the court." *State Farm Ins. Cos. v. Seefeld*, 481 N.W.2d 62, 64 (Minn.1992). They are therefore reviewed de novo. *See Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn. 1984).

### 1. "Expected Injury" Exclusion

■■■ American Family argues that there is no coverage because Palmieri's sexual abuse of M.B. and Mi.B. was expected from the standpoint of its insured, Le Terra.

For the purposes of an exclusionary clause in an insurance policy the word "expected" denotes that the actor knew or should have known that there was a substantial probability that certain consequences will result from his actions.

*Diocese of Winona v. Interstate Fire & Cas. Co.*, 89 F.3d 1386, 1391 (8th Cir.1996) (applying Minnesota law). For substantial probability to exist,

[t]he indications must be strong enough to alert a reasonably prudent man not only to the possibility of the results occurring but the indications also must be sufficient to forewarn him that the results are highly likely to occur.

*Id.* The question then becomes whether a reasonably prudent person in Gurler's position would have had sufficient indications to forewarn her that Palmieri's sexual harassment and assault of M.B. and Mi.B. were

highly likely to occur. *See id.* at 1394–96 (holding that because the Diocese and the Archdiocese were aware that a pedophilic priest had previously abused children, his subsequent abuse of children was "expected" and insurance coverage was therefore not available under policy that excluded coverage for "expected" injuries).

Gurler and Palmieri lived and worked together on the premises of Le Terra and Prima Fotographia, which were across the hall from each other. Gurler in her capacity as president of Le Terra sent models to Palmieri to be photographed; she also did their makeup and was present in the studio while Palmieri was with them. The models changed clothes in a dressing room that opened off the studio. Gurler was in the studio while Palmieri molested Mi.B. in the dressing room in November or December 1991 and early in 1992; she was also in the studio when he molested M.B. in the dressing room during March 1992 and April or May 1992.

Testimony showed that before and during the time that Palmieri molested M.B. and Mi.B., Gurler was aware that Palmieri followed models into the dressing room while they were changing clothes, that he used sexually demeaning language to them, that he took them to secluded areas of the building, and that the models were uncomfortable and disturbed after being with Palmieri. Gurler was present on at least one occasion when Palmieri, while having an erection, rubbed his body up against a model. On two instances when models complained about Palmieri, Gurler took no action, and she continued to send models to be photographed by Palmieri.

We conclude that there were sufficient indications to warn a person in Gurler's position that contact between young women and Palmieri was likely to result in his nonconsensual sexual advances toward them. Gurler knew or should have known there was a substantial probability that nonconsensual sexual contact was likely to result from send-

ing models to Palmieri. Because the sexual harassment of M.B. and Mi.B. was expected from the standpoint of Le Terra, the insurance policy exclusion applies.

## 2. Collateral Estoppel

■ The elements of collateral estoppel are (1) that the issue be identical with the issue raised in the prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party to or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue. *Bublitz v. Commissioner of Revenue,* 545 N.W.2d 382, 385 (Minn.1996).

■ Whether collateral estoppel is available is a mixed question of law and fact, subject to de novo review. *Regents of the Univ. of Minnesota v. Medical Inc.,* 382 N.W.2d 201, 207 (Minn.App.1986), *review denied* (Minn. Apr. 18, 1986). The decision to apply the doctrine is nonetheless left to the sound discretion of the trial court. *Id.*

■ The jury in the underlying liability action found that Le Terra acted with "deliberate disregard for the safety" of M.B. and Mi.B. The district court in this declaratory judgment action used the jury finding as a basis for concluding that Le Terra expected the injury that occurred. Appellants argue that this was a misuse of collateral estoppel [1] and cite *Diocese of Winona,* which found no application of collateral estoppel.

The district court correctly reasoned that the finding of the state court jury of "recklessness" by the Diocese and the Archdiocese, for purpose of awarding punitive damages, is a separate and distinct issue from insurance coverage. *See Diocese [of Winona v. Interstate Fire & Casualty Co.,* 858 F.Supp. 1407, 1417–19, (D.Minn.1994) ] (recklessness reflects degree of culpability—such as an unreasonable but slight risk of extreme harm—rather than likelihood of occurrence) * * *.

1. The district court's decision to use the jury and trial court findings rather than the record on which those findings were based would not, in itself, justify reversal in this case. An appellate court will not reverse a correct decision of the district court because the district court based that decision on the wrong reasoning. *Bains v. Piper, Jaffray & Hopwood, Inc.,* 497 N.W.2d 263, 270 (Minn.App.1993), *review denied* (Minn. Apr. 20, 1993).

89 F.3d at 1391 n. 6. Where a gap in Minnesota law is filled by a federal court decision, Minnesota courts are not required to adopt that decision. *Airlines Reporting Corp. v. Norwest Bank, N.A.*, 529 N.W.2d 449, 451 (Minn.App.1995). In addition, in contrast to the case before us, the district court in *Diocese of Winona* based its conclusion that collateral estoppel did not apply to a detailed analysis of the meanings of "reckless" and "expect."

> The term "expected," in the context of CGL insurance, does indeed refer to a single concept—it denotes a belief that a particular event will probably or certainly occur. * * *
>
> The concept of recklessness, on the other hand, is more complex. * * * Determining whether a party was reckless requires two determinations: whether the relevant harm was foreseeable and whether risking its occurrence was reasonable. * * *
>
> [E]ven an action that creates only a slight likelihood of harm could be considered reckless. By definition, however, that harm cannot be described as "expected" because the likelihood of its occurrence is less than "more likely than not" on the certainty spectrum.

*Diocese of Winona v. Interstate Fire & Cas. Co.*, 858 F.Supp. 1407, 1418 (D.Minn.1994) (citations omitted). Because there was no finding of recklessness here, the *Diocese of Winona* holding that collateral estoppel did not apply is distinguishable.

■ The jury found that Le Terra had acted not with "recklessness" but with "deliberate disregard of [appellants'] safety." Therefore, it is appropriate to analyze the phrase "deliberate disregard" and determine its relationship to the term "expect" as used in the policy. Under Minnesota law, a party has acted with deliberate disregard for the rights or safety of others if the party

has knowledge of facts or intentionally disregards facts that create a high probability of injury to the * * * safety of others and:
(1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the * * * safety of others; or
(2) deliberately proceeds to act with indifference to the high probability of injury to the * * * safety of others.

Minn.Stat. § 549.20, subd. 1(b) (1996). The jury found that Le Terra knew facts that created a probability of injury to the safety of M.B. and Mi.B. and acted either in conscious disregard of or with indifference to the high probability of injury to their safety when it placed them in repeated contact with Palmieri. This language closely resembles that used in the definition of "expected": "knew or should have known that there was a substantial probability that certain consequences will result from his actions." *Diocese of Winona*, 89 F.3d at 1391. Thus, to find that injury was expected from the standpoint of Le Terra, it would be necessary to find that Le Terra knew or should have known there was a substantial probability that injury to M.B. and Mi.B. would result from their repeated contact with Palmieri. This requirement parallels the "deliberate disregard" found by the jury.

Under Minn.Stat. § 549.20, subd. 1, acting with deliberate disregard for someone's safety means knowing facts that create a probability of injury and then acting in disregard of those facts; according to *Diocese of Winona*, expecting injury to someone means acting with the knowledge that it is probable that injury will occur as a result of the act. 89 F.3d at 1391. In light of the high degree of similarity between the definitions of these terms, the trial court did not abuse its discretion in using a jury's finding that an entity acted in deliberate disregard of the safety of another as a basis for concluding that, under the exclusion in the insurance policy, the entity expected the injury that occurred as a result of the entity's act.[2]

---

**2.** Appellants argue that collateral estoppel is used improperly because an issue resolved in a liability proceeding could not be relevant in an insurance coverage proceeding. We disagree. *See Graham v. Special School Dist. No. 1*, 472 N.W.2d 114, 119 (Minn.1991) (holding that a

discharged teacher's "defamation action must be dismissed on the merits because, by reason of collateral estoppel, the alleged defamatory statements were established to be true in the teacher's termination proceeding").

The issue in this declaratory judgment action is whether Gurler knew of Palmieri's abuse of M.B. and Mi.B. The same issue was before the trial court in the underlying liability action and was resolved specifically by the trial court's finding that

> Susan Gurler * * * knew of the sexual improprieties being committed by Palmieri. Such knowledge is established by the jury's verdict with respect to punitive damages as well as this finding by the Court.

Therefore, the first element of collateral estoppel (that the issue be identical with the issue raised in the prior adjudication) is met. Also met is the second element of collateral estoppel (that there be a final judgment on the merits). Because Le Terra was a party to the previous action, the third element is met. Le Terra was represented by counsel, and Gurler was deposed and testified at trial. Thus, the fourth element of collateral estoppel (a full and fair opportunity to be heard) is also met. When all four elements are met, the district court has discretion to apply collateral estoppel. *Regents*, 382 N.W.2d at 207. The trial court properly exercised its discretion in applying collateral estoppel in this case.

Because we affirm the declaratory judgment that the "expected injury" exclusion applies, we do not address appellants' arguments raised in support of their own motion for summary judgment.

## DECISION

Because the injury suffered by M.B. and Mi.B. was expected by Le Terra within the meaning of that term as used in the expected injuries exclusion in the insurance policy, the declaratory judgment stating that the exclusion applies is affirmed.

**Affirmed.**