The TRAVELERS INDEMNITY
COMPANY, et al.,
Respondents,

v.

BLOOMINGTON STEEL & SUPPLY
COMPANY, et al., Defendants,

Jose Padilla, Appellant.

No. A04–1713.

Supreme Court of Minnesota.

Aug. 3, 2006.

Charles D. Slane, Terry & Slane, P.L.L.C., Bloomington, MN, for Appellant.

Duana J. Grage, Holly J. Tchida, Hinshaw & Culbertson, L.L.P., Minneapolis, MN, for Respondents.

Charles A. Bird, Bird, Jacobsen & Stevens, P.C., Rochester, MN, for Amicus

Curiae Minnesota Trial Lawyers Association.

## OPINION

PAGE, Justice.

This case presents the issue of whether, and under what circumstances, the intent or knowledge of an agent of a corporation may be imputed to the corporation for purposes of determining whether bodily injury inflicted by the agent upon a third party was expected or intended from the standpoint of the corporate insured.

On October 18, 2000, Cecil Reiners struck Jose Padilla on the head, causing Padilla serious injury. Padilla sued Reiners for assault and battery and sued Bloomington Steel and Supply Company (Bloomington Steel), a corporation of which Reiners was the sole shareholder, officer, and director, for respondeat superior, negligent hiring,[1] negligent retention, and negligent supervision. Bloomington Steel's insurers, the Travelers Indemnity Company and the Charter Oak Fire Insurance Company (collectively, Travelers), denied any obligation to defend or indemnify Reiners in the underlying action. Travelers did defend Bloomington Steel in the underlying action, but reserved the "right to withdraw from the defense if there is a determination that there is no coverage for any claims under the policy."

After the district court denied Bloomington Steel's motion for summary judgment in the underlying action, Travelers brought this action seeking a declaratory judgment that it had no duty under its policies with Bloomington Steel to indemnify Bloomington Steel in the underlying action. Travelers, Bloomington Steel, and Padilla then all brought motions for summary judgment in this coverage dispute. The district court denied Bloomington Steel's and Padilla's motions and granted Travelers' motion for summary judgment. The district court found that coverage for Padilla's injuries was barred by the expected or intended injury exclusion of the insurance policies. Padilla appealed,[2] and the court of appeals affirmed. *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 695 N.W.2d 408, 409, 411 (Minn.App. 2005). The court of appeals held that, given Reiners' history of violent behavior, Bloomington Steel must be held to have "expected" the damages resulting from the injury to Padilla. *Id.*

This court granted Padilla's petition for further review and instructed the parties to address whether the intent or knowledge of an agent of a corporation may be imputed to the corporation for purposes of determining whether bodily injury was expected or intended from the standpoint of the corporation. Because we conclude that nothing in the policies issued by Travelers to Bloomington Steel requires that Reiners' knowledge of his own history of violence be imputed to Bloomington Steel, we reverse the court of appeals and remand for further proceedings.

## I.

Reiners began working for Bloomington Steel, a corporation, in 1968. In 1991, he

---

1. Padilla apparently later withdrew his claim for negligent hiring.

2. Padilla asserts, and Travelers does not contest, that he and Bloomington Steel entered into a *Miller v. Shugart* agreement after the district court's grant of summary judgment in Travelers' favor. *See Miller v. Shugart,* 316 N.W.2d 729, 732–36 (Minn.1982) (allowing personal injury plaintiff to collect on stipulated judgment in garnishment action against defendant's liability insurer). A copy of the agreement between Padilla and Bloomington Steel is not part of the record.

became the sole shareholder, director, and officer of Bloomington Steel. From May 31, 2000, through May 31, 2001, a period spanning Reiners' assault of Padilla, Travelers provided both commercial general liability insurance coverage and umbrella liability insurance coverage to Bloomington Steel. The terms of the two policies relevant to our disposition in this case are essentially the same. Under the policies, Travelers is obligated to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policies "appl[y] to 'bodily injury' and 'property damage' only if: * * * [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence.' " "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policies exclude " '[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured" from coverage. In addition, the policies contain a "separation of insureds" clause which, in relevant part, reads: "[T]his insurance applies: [ (1) ] As if each Named Insured were the only Named Insured; and [ (2) ] Separately to each insured against whom claim is made or 'suit' is brought." [3]

On October 18, 2000, Padilla was working as an employee of Key Star, a company that at the time shared a common work area with Bloomington Steel. In the underlying lawsuit, Padilla alleged that Reiners approached Padilla and told Padilla to speak in English, not in Spanish. Later that day, when Reiners discovered Padilla speaking Spanish, Reiners hit Padilla in the head with a piece of wood, fracturing Padilla's skull. Padilla alleges that he suf-

fered a severe brain injury and that he has permanent injuries as a result. Reiners eventually pleaded guilty to first-degree assault for his actions.

Padilla brought suit against both Reiners and Bloomington Steel. Against Reiners, Padilla asserted a claim of assault and battery. Against Bloomington Steel, Padilla alleged that Reiners was acting within the course and scope of his duties as an employee of Bloomington Steel when Reiners assaulted him, and that Bloomington Steel was therefore responsible for the damages caused by Reiners under the doctrine of respondeat superior. Finally, Padilla alleged that Bloomington Steel was negligent in its retention and supervision of Reiners.

Bloomington Steel moved for summary judgment on the claims against it. In denying Bloomington Steel's motion, the district court noted that an employer is vicariously liable for the torts of its employees if those torts are committed within the course and scope of employment. The court concluded that, "viewing the facts in a light most favorable to Padilla, as the non-moving party, the assault was arguably related to Reiners' supervisory duties at Bloomington Steel because Reiners was angry at Padilla for interfering with the work of Bloomington Steel employees." The court further concluded that "a corporation may be liable for negligently retaining or supervising an employee even if the employee is the corporation's sole shareholder and director." The court reasoned that "it would be inconsistent to recognize a corporation as a distinct entity shielding its sole shareholder from personal liability for corporate obligations yet disregard the corporate entity as a fiction or an alter ego when the corporation is potentially liable."

---

**3.** All of the above quoted language is taken from the commercial general liability policy. However, we refer generally throughout the opinion to "the policies" because they do not differ in any aspect relevant to this opinion.

Travelers then commenced this action against Bloomington Steel, Reiners, and Padilla, seeking declaratory judgment that it has no obligation to indemnify Bloomington Steel in the underlying action. Travelers asserted that the actions, expectation, and intent of Reiners, as the sole shareholder, sole director, and only officer of Bloomington Steel, must be imputed to Bloomington Steel. As a result, Travelers alleged, any damages awarded to Padilla in the underlying action would not be covered under the policy due to the requirement that the injury be "unexpected and unintended by the insured."

Padilla, Bloomington Steel, and Travelers each moved for summary judgment in the coverage action. In support of his motion for summary judgment against Travelers, Padilla alleged that Reiners had a history of violent behavior, including one incident in which Reiners threatened to kill an employee with a hammer and another in which Reiners threw rocks at an employee's vehicle. Travelers did not contest any of these allegations and used them as a basis for its argument that Bloomington Steel should therefore have "expected" Reiners' assault against Padilla. However, there is no admissible evidence in the record of Reiners' violent past, and, for purposes of this appeal, Padilla's allegations are nothing more than allegations.

In entering judgment for Travelers, the court concluded that the exclusion in the Travelers' policy for intentional acts precluded coverage for any damages Bloomington Steel could be legally obligated to pay to Padilla. The court cited *American Family Mutual Insurance Co. v. M.B.*, a case in which the insured corporation was held to have no coverage for sexual harassment because the corporation's president knew or should have known the harassment was likely to occur, and therefore the harassment was held to have been "expect-

ed" from the standpoint of the insured corporation. 563 N.W.2d 326, 328–29 (Minn.App.1997), *rev. denied* (Minn. July 28, 1997). The court reasoned that, "given Reiners' extensive history of physical violence on the job," Bloomington Steel "knew or should have known that an outburst of violence by Reiners was highly likely to occur." Moreover, the court reasoned, if a company president's knowledge is to be imputed to the corporation under *M.B.*, then Reiners' knowledge, as the sole owner, director, and operator of Bloomington Steel, of his own violent tendencies made the assault of Padilla "expected" under the Travelers' policy exclusion.

On appeal to the court of appeals, Padilla argued that the district court erred in applying the objective test of *M.B.*, and argued that this court had adopted a stricter, subjective standard in the case of *Domtar v. Niagara Fire Insurance Co.*, 563 N.W.2d 724 (Minn.1997). In *Domtar*, we observed that "it is the insured's actual expectation of damage that allows a defense to coverage." *Id.* at 735. The court of appeals declined to decide whether an objective or subjective standard applied, concluding that under either standard Bloomington Steel must be held to have expected the damages resulting from Padilla's injuries. *Travelers*, 695 N.W.2d at 411. "[G]iven Reiners's lengthy record of violent behavior," the court concluded, "[t]he commingled identity of Reiners and Bloomington Steel permits no other rational result." *Id.* Nothing in the court of appeals' decision explains the "commingled identity" of Reiners and Bloomington Steel beyond the fact that Bloomington Steel had been wholly owned by Reiners since 1991.

## II.

On appeal from summary judgment, this court determines "whether

there are any genuine issues of material fact, and whether the lower court erred in its application of the law." *Olmanson v. LeSueur County*, 693 N.W.2d 876, 879 (Minn.2005). We view the evidence in a light most favorable to the nonmoving party, here Padilla. *See Ruud v. Great Plains Supply, Inc.*, 526 N.W.2d 369, 371 (Minn.1995).

■ We begin our analysis of the issue presented here by considering the terms of the insurance policies between Travelers and Bloomington Steel. Interpretation of an insurance policy is a question of law we review de novo. *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 879 (Minn.2002). If the language of an insurance contract is unambiguous, it must be given its plain and ordinary meaning. *Id.* at 880. But if the language is ambiguous, it will be construed against the insurer, as drafter of the contract. *Progressive Specialty Ins. Co. v. Widness*, 635 N.W.2d 516, 518 (Minn.2001). Coverage provisions are construed according to the expectations of the insured. *See Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.*, 366 N.W.2d 271, 276–77 (Minn.1985).

■ While the insured bears the initial burden of demonstrating coverage, the insurer carries the burden of establishing the applicability of exclusions. *Domtar*, 563 N.W.2d at 736. Insurance contract exclusions are construed narrowly and strictly against the insurer, *Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 609, 613 (Minn.2001), and, like coverage, in accordance with the expectations of the insured. *Am. Family Mut. Ins. Co. v. Peterson*, 405 N.W.2d 418, 422 (Minn.1987).

Under the policies at issue here, Travelers is obligated to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The parties do not dispute that, viewing the facts most favorably to Padilla, Bloomington Steel could be legally obligated to pay damages to Padilla as a result of bodily injury Padilla suffered at the hands of Reiners.

■ Both policies exclude coverage for bodily injury "expected or intended from the standpoint of the insured." The named insured in each of the policies at issue is Bloomington Steel. Thus, the question is whether Padilla's injuries were expected or intended from the standpoint of Bloomington Steel. On that question, Travelers bears the burden of proof.

### A.

■ Travelers argues that Reiners' intent and expectations must be imputed to Bloomington Steel simply because Reiners was the sole shareholder, director, and officer of the company. According to Travelers, "when the control over the corporate entity is so complete by one agent of the entity, the intent and expectation must be imputed to the corporation." We disagree.

■ The language of the Travelers' policies requires that Reiners and Bloomington Steel be considered separately. Under the terms of the policies, each policy applies "as if each Named Insured were the only Named Insured" and "separately to each insured against whom claim is made or 'suit' is brought." As we observed in *Utica Mutual Insurance Co. v. Emmco Insurance Co.*, 309 Minn. 21, 31, 243 N.W.2d 134, 140 (1976), such a severability clause requires that coverage exclusions be construed only with reference to the particular insured seeking coverage. Because it is Bloomington Steel that seeks coverage here, the exclusion for bodily injury expected or intended by "the insured" is limited to bodily injury expected or intended by Bloomington Steel itself. More-

over, Travelers insured Bloomington Steel as a corporation, as indicated by the policy declarations. Although Travelers now argues that Reiners' expectation and intent must be attributed to Bloomington Steel because Reiners was "the sole owner and operator of the corporation," Travelers explicitly acknowledged Bloomington Steel's separate status for coverage purposes when it issued the policies at issue here.

The language of the Travelers' policies excludes coverage for bodily injury expected or intended from the standpoint of "the insured." Travelers could have made clear that it was not insuring Bloomington Steel for the risk of an intentional act committed by Reiners in at least two different ways. Instead of excluding coverage for bodily injury expected or intended from the standpoint of *"the"* insured, the Travelers' policies could have excluded coverage for bodily injury expected or intended from the standpoint of *"an"* or *"any"* insured.[4] As we held in *Watson v. United Services Automobile Ass'n,* 566 N.W.2d 683, 691–92 (Minn.1997), an exclusion in a fire insurance policy for loss caused by the act of "an insured" excludes coverage for co-insured spouses, even when they are not responsible for the property damage at issue, although such clauses conflict with the Minnesota standard fire insurance policy and are therefore unenforceable under Minn.Stat. § 65A.01 (2004). There is no comparable standard CGL policy language under Minnesota law and therefore such a clause in the policies issued by Travelers to Bloomington Steel would have been enforceable here and would have barred coverage for Bloomington Steel for Reiners' acts to the extent Reiners was also insured under the policies.

■ As we have recognized, an insurance policy is a contract between insurer and insured. *See Vetter v. Sec. Cont'l Ins. Co.,* 567 N.W.2d 516, 521 (Minn.1997). Because the relationship between insurer and insured is contractual, the parties are free to contract as they desire and, so long as coverage required by law is not omitted and the provisions in the policy do not contravene applicable statutes, the extent of the insurer's liability is determined by the insurance contract. *Thommes,* 641 N.W.2d at 882. At the same time, as we have recognized, insurance contracts are contracts of adhesion. *Canadian Universal Ins. Co. v. Fire Watch, Inc.,* 258 N.W.2d 570, 574–75 (Minn.1977). Because policy exclusions are strictly construed against the insurer, and because Travelers could have unilaterally included provisions in its policies that would have unambiguously excluded coverage for Bloomington Steel for claims against it resulting from Reiners' actions, we conclude that the language of the Travelers' policies does not require that Reiners' intent be automatically imputed to Bloomington Steel.

### B.

■ Travelers argues that Reiners' knowledge nevertheless must be attributed to Bloomington Steel under general corporate legal principles.[5] It is true that "a

4. The policies also insured Bloomington Steel's stockholders, executive officers, directors, and employees under certain conditions.

5. Travelers does not clearly argue, and we do not reach, the issue of whether the intent of an agent, for whose acts a corporate insured is vicariously liable under the doctrine of respondeat superior, can be imputed to the insured for purposes of the "expected or intended injury" exclusion in the policies at issue. While Travelers argues that Reiners' intent should be imputed to Bloomington Steel because of the level of control he held over Bloomington Steel, Travelers concedes that "the intent or knowledge of *any* agent of a corporation should not necessarily be imputed in every instance to the corporation for

corporation is charged with constructive knowledge * * * of all material facts of which its officer or agent * * * acquires knowledge while acting in the course of employment within the scope of his or her authority." 3 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations*, § 790 (2002); *see Brooks Upholstering Co. v. Aetna Ins. Co.*, 276 Minn. 257, 262, 149 N.W.2d 502, 506 (1967) ("[I]f the officer or agent was one who was acting within the scope of his duties, his knowledge is imputable to the corporation.").

■ We conclude that Travelers' argument must fail for two reasons. First, Travelers points us to no law holding that general corporate legal principles can create an exclusion from coverage not found in the insurance policy itself. To adopt Travelers' position would require us to override long-standing principles of interpretation of insurance policies holding that exclusions in insurance contracts are to be read narrowly against the insurer. *See Atwater Creamery*, 366 N.W.2d at 276.

Second, general corporate legal principles limit the knowledge that is attributed from agent to principal to that knowledge acquired by the agent "while acting in the course of employment within the scope of his or her authority." 3 *Fletcher, supra*, § 790. While the parties contend Reiners' history of violence in the workplace is undisputed, there is no admissible evidence of that history in the record before us.[6] As a result, we cannot say on this record that Reiners had a history of violence, much less that Bloomington Steel should be charged with knowledge of it.

■ But our resolution of this matter should not be construed to mean that Bloomington Steel cannot be charged with knowledge of Reiners' propensity for violence, or that Bloomington Steel cannot have been negligent in its retention or supervision of Reiners. A corporation can be held liable for a tort just as a natural person can. 10 *Fletcher, supra*, § 4877. In determining the corporation's tort liability, the intent of an agent or employee of the corporation will be imputed to the

purposes of a coverage analysis." But by arguing that Reiners' intent should be imputed here simply because he is the sole shareholder, officer, and director, Travelers leaves us no principled way to differentiate between those circumstances in which intent of an agent should be imputed and those in which it should not.

To take but one example, consider a situation in which a single person is the sole shareholder, officer, and director, but another individual actively manages the corporation. Should the shareholder/officer/director's knowledge and intent be attributed to the corporation, even though that individual has no role in managing the corporation? Should the manager's intent be attributed to the corporation even though that individual has no ownership? And what about knowledge obtained by the shareholder/officer/director outside the scope of his employment? For example, if Reiners were perfectly behaved in the workplace but prone to fighting in bars after

hours and on his own time, should that knowledge be attributed to Bloomington Steel? We believe our resolution of the matter avoids these problems inherent in the rule Travelers advocates.

6. For example, while the parties apparently agree that an employee of Key Star alleged that Reiners had assaulted him three times before Reiners assaulted Padilla, the only evidence of these assaults referenced by the parties is a question posed to Reiners in his deposition in the underlying action. Reiners asserted his Fifth Amendment privilege and did not answer the question. The parties have not detailed when these assaults occurred. With the exception of one incident, in which Reiners aggressively shook a business associate's hand, the remaining incidents cited by the parties to this court appear to have involved damage to property or verbal threats to individuals and are based on hearsay statements contained in depositions in the underlying action.

corporation when the agent or employee "acted on behalf of the corporation." *Id.; see Worcester Ins. Co. v. Fells Acres Day Sch., Inc.,* 408 Mass. 393, 558 N.E.2d 958, 969 (1990). Under the general corporate legal principles cited by Travelers, Bloomington Steel is charged with knowledge of Reiners' acts, if any, committed in the course of his employment and within the scope of his authority, and is charged with Reiners' intent when Reiners acted on its behalf.

■ It will be up to the finder of fact to determine, based on the knowledge attributed to Bloomington Steel using the principles set forth above, whether Bloomington Steel, as an entity separate and distinct from Reiners, expected Reiners' assault of Padilla. Our previous statement in *Domtar* sets out the proper definition of "expectation":

> "[E]xpected" damage [requires] a certainty of harm on the part of the insured greater than general standards of foreseeability used to impose liability on the insured. In explaining the high degree of certainty demanded, we have also equated "expected" damage with "reckless" conduct. Of course, this standard does not preclude the use of circumstantial evidence or proof of willful blindness, but is the insured's actual expectation of damage that allows a defense to coverage.

563 N.W.2d at 735 (citations omitted). We emphasize that, as indicated in *Domtar*, showing that an insured "expected" the injury suffered requires more than showing sufficient "foreseeability" to maintain a negligence action against the insured. *See Ponticas v. K.M.S. Invs.,* 331 N.W.2d 907, 908, 911 (Minn.1983) (using a "foreseeability" standard to analyze case based on negligent hiring). Whether Bloomington Steel expected Reiners' assault of Padilla based on its actual and imputed knowledge

of other incidents of violence will be a fact-specific determination. On the record before us, we express no opinion as to whether Bloomington Steel expected the assault of Padilla or whether Bloomington Steel was negligent in its retention or supervision of Reiners.

## C.

Finally, Travelers urges us to affirm the lower courts on grounds that to do otherwise would allow Reiners "to hide behind a corporate form to protect himself from the economic consequences of his violent assault." Travelers' concern is legitimate and appropriate, and we have expressed such concern ourselves on other occasions. For example, in *Hogs Unlimited v. Farm Bureau Mutual Insurance Co.* we addressed whether two partners in a hog farming operation could recover under the partnership's casualty insurance policy after the third partner killed the partnership's hogs by deliberately gassing them with anhydrous ammonia. 401 N.W.2d 381, 381, 383 (Minn.1987). We held that the innocent insured partners could recover their proportionate interests under the insurance policy provided that, among other things, "payment of the insurance proceeds to the innocent partners [could] be accomplished to deny, in a practical manner, any appreciable benefit to the guilty partner." *Id.* at 386.

■ But the concern that Reiners might benefit here cannot be the basis for overriding the terms of the Travelers' policies. We note that in the underlying litigation Padilla brought claims against both Reiners and Bloomington Steel. The record does not disclose how Padilla's claims against Reiners were resolved, if indeed they have been resolved. Therefore, on the record before us, we cannot conclude that requiring Travelers to indemnify Bloomington Steel for the damages suf-

fered by Padilla would result in an undue benefit to Reiners or would allow Reiners to protect himself from the economic consequences of his assault of Padilla.[7]

Reversed and remanded.

---

7. The following additional issues are raised in the brief of amicus curiae Minnesota Trial Lawyers Association (MTLA): (1) whether an intentional act, for which a corporation is liable under respondeat superior, can constitute an "occurrence" under the policies at issue and (2) whether, assuming that "negligent retention and supervision" is the only potential "occurrence" in this case, proper interpretation of the policies requires that the "expectation and intent" of Bloomington Steel be evaluated at the time of the negligent retention and supervision. We decline to reach these issues because they were not decided by the lower courts and are outside the scope of the briefing order given by this court to the parties. Because we decline to reach the separate issues raised by MTLA, Travelers' motion to strike MTLA's brief is moot.