NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0230n.06

Case No. 21-4008

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TROY STACY ENTERPRISES INC., dba Craft & Vinyl; SWEARINGEN SMILES LLC; ELEISHA J. NICKOLES, D.D.S.; REEDS JEWELERS OF NIAGRA FALLS, INC.; BURNING BROTHERS BREWING LLC; CHICAGO MAGIC LOUNGE LLC; CDC CATERING, INC., t/a Brookside Manor, individually and behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) | **FILED** Jun 08, 2022 DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| | ) | O P I N I O N |
| CINCINNATI INSURANCE COMPANY; CINCINNATI CASUALTY COMPANY; CINCINNATI INDEMNITY COMPANY; CINCINNATI FINANCIAL CORPORATION, | ) ) ) ) ) | |
| Defendants-Appellees. | ) | |

Before: SUTTON, Chief Judge; COLE and DONALD, Circuit Judges.

COLE, Circuit Judge. Like many companies across the United States, Troy Stacy Enterprises and six other businesses sought to recoup economic losses attributable to the COVID-19 pandemic through their insurance policies with Cincinnati Insurance and other providers. Cincinnati Insurance moved to dismiss the complaints. The district court found that, under each

relevant state's laws, Troy Stacy failed to state a claim because it had not plausibly alleged either "physical loss" or "physical damage."  We affirm.

I.

Troy Stacy Enterprises Inc.; Swearingen Smiles LLC; Eleisha J. Nickoles DDS; Reeds Jewelers of Niagara Falls, Inc.; Burning Brothers Brewing LLC; Chicago Magic Lounge LLC; and CDC Catering, Inc. t/a Brookside Manor are all businesses that hold property insurance policies with Cincinnati Insurance Company.  After the COVID-19 pandemic broke out in March 2020, civil orders issued in each business's home state—Ohio, West Virginia, New York, Minnesota, Illinois, and Pennsylvania, respectively—restricted normal business operations to prevent the virus's spread.  Like many others across the United States during this period, the businesses could not operate as they normally would, and they lost income and incurred other expenses to comply with the civil orders.

To recover some of these losses, the businesses submitted claims for reimbursement to Cincinnati Insurance for "direct physical loss or damage" to their property.  (Am. Compl., R. 61, PageID 2884.)  When Cincinnati Insurance denied their claims, they filed four separate suits that were eventually consolidated. *Troy Stacy Enters. Inc. v. Cincinnati Ins. Co.*, 337 F.R.D. 405, 406–08 (S.D. Ohio 2021).  In their consolidated complaint, the businesses (collectively, "Troy Stacy") claim the COVID-19 virus rendered their properties "to a state dangerous and/or unsatisfactory for use because of the fortuitous presence and effect of the coronavirus, fomites, and respiratory droplets or nuclei directly upon the property."  (Am. Compl., R. 61, PageID 2927.)  Troy Stacy brought claims for breach of contract, seeking business income coverage, civil authority coverage, extra expense coverage, and sue-and-labor coverage.  Troy Stacy also sought declaratory judgment on these four claims.

Although the businesses hold separate policies with Cincinnati Insurance, the policies are meaningfully similar. Relevant to the claims at issue here, each business's policy states the following:

> We will pay for the actual loss of "Business Income" . . . you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss.

(*E.g.*, Craft & Vinyl Policy, R. 61-1, PageID 3011; Swearingen Smiles Policy, R. 61-2, PageID 3154.) The policies define "Covered Causes of Loss" as "direct 'loss' unless the 'loss' is excluded or limited[.]" (*E.g.*, Brookside Manor Policy, R. 61-7, PageID 4929.) "Loss" means "accidental physical loss or accidental physical damage." (*E.g.*, Craft & Vinyl Policy, R. 61-1, PageID 3031.)

The policies also provide "Extra Expense" coverage and "Civil Authority" coverage. An "Extra Expense" is a necessary expense an insured incurs during a "period of restoration" that it would not have sustained without direct loss to property. (Am. Compl., R. 61, PageID 2897.) "Civil Authority" coverage protects an insured when a loss causes damage to non-insured property, and a civil authority prevents access to the insured premises. (*Id.* at PageID 2897–98.)

Cincinnati Insurance moved to dismiss the consolidated suit, arguing that Troy Stacy did not plausibly allege that COVID-19 or the stay-at-home orders caused physical loss or physical damage to its business. The district court granted the motion to dismiss. *Troy Stacy Enters. Inc. v. Cincinnati Ins. Co.*, --- F. Supp. 3d ---, 2021 WL 4346688, *1 (S.D. Ohio 2021). First, contrary to Cincinnati Insurance's argument, the court determined that Ohio's choice-of-law requirements "cut in favor of applying the law of each plaintiff's state of residence." *Id.* at *3. Second, analyzing the contract rules of each of the six states at issue here, the court held that Troy Stacy failed to state a claim because "whether the 'loss' comes by way of the virus, the disease, or government

closure orders, under every applicable state's law, [its] reading asks too much of the policy language." *Id.* at *5. Troy Stacy now appeals.

## II.

As a preliminary matter, choice of law is a threshold question that must be resolved before we reach any other issue this case presents. "Federal courts sitting in diversity must apply the choice-of-law principles of the forum"—in this instance, Ohio. *Tele-Save Merch. Co. v. Consumers Distrib. Co., Ltd.,* 814 F.2d 1120, 1122 (6th Cir. 1987) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Here, the parties do not cite any choice-of-law provision in the insurance policies. In Ohio, when the parties have not designated a choice of applicable law, courts generally resolve the conflict by applying the Restatement (Second) of Conflict of Laws. *Gries Sports Enters., Inc. v. Modell*, 473 N.E.2d 807, 810 (Ohio 1984); *see also Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 288–89 (Ohio 1984); *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 820 (6th Cir. 1990). But before turning to the Restatement and undertaking a choice-of-law analysis, "an actual conflict between Ohio law and the law of another jurisdiction must exist[.]" *Hayslip v. Genuine Parts Co.*, 420 F. Supp. 3d 666, 677 (S.D. Ohio 2019) (quoting *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 861 N.E.2d 109, 115 (Ohio 2006)).

Cincinnati Insurance argues that Ohio law should govern because each of the states at issue here—Ohio, West Virginia, New York, Minnesota, Illinois, and Pennsylvania—approach policy interpretation the same way. We agree. Principles of policy interpretation are fundamentally the same in each state. "In Ohio, as in all States (we expect), the state courts construe the terms of a contract in accordance with their conventional meaning." *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 400 (6th Cir. 2021); *see also Laboy v. Grange Indem. Ins. Co.*, 41 N.E.3d 1224, 1227 (Ohio 2015) (Ohio); *Cherrington v. Erie Ins. Prop. & Cas. Co.*, 745 S.E.2d 508, 524 (W. Va.

2013) (West Virginia); *U.S. Fid. & Guar. Co. v. Annunziata*, 492 N.E.2d 1206, 1207 (N.Y. 1986) (New York); *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006) (Minnesota); *Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004) (Illinois); *401 Fourth St., Inc. v. Invs. Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005) (Pennsylvania). Each of these state courts also views policy terms in the context of the policy as a whole and its overall purpose. *See Wohl v. Swinney*, 888 N.E.2d 1062, 1065 (Ohio 2008) (Ohio); *Glen Falls Ins. Co. v. Smith*, 617 S.E.2d 760, 769 (W. Va. 2005) (West Virginia); *Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, Nat'l Ass'n v. Nomura Credit & Cap., Inc.*, 92 N.E.3d 743, 748 (N.Y. 2017) (New York); *Bolduc v. N.Y. Fire Ins. Co.*, 69 N.W.2d 660, 664 (Minn. 1955) (Minnesota); *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006) (Illinois); *Pa. Nat'l Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 14 (Pa. 2014) (Pennsylvania). Because the states at issue employ the same principles of policy interpretation, there is no actual conflict that requires us to engage in a choice-of-law analysis. Accordingly, Ohio law governs this dispute.

III.

We review the district court's interpretation of the contracts de novo and in accordance with the substantive law of Ohio. *Dakota Girls, LLC v. Phila. Indem. Ins. Co.*, 17 F.4th 645, 648 (6th Cir. 2021); *see also Brown Jug, Inc. v. Cincinnati Ins. Co.*, 27 F.4th 398, 402 (6th Cir. 2022). If the state's highest court has not issued an opinion directly on point, we make an "*Erie* guess" and "determine how that court, if presented with the issue, would resolve it." *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358–59 (6th Cir. 2013).

We also review de novo a district court's ruling on a motion to dismiss. *Brown Jug*, 27 F.4th at 402 (citing *Jasinski v. Tyler*, 729 F.3d 531, 538 (6th Cir. 2013)). "[O]nly a complaint

that states a plausible claim for relief survives a motion to dismiss."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

IV.

Troy Stacy is entitled to business income coverage only if the presence of the COVID-19 virus on insured property or the civil authority orders constitutes "direct accidental physical loss or accidental physical damage."  Troy Stacy's extra expense coverage is also tied to direct loss because this coverage is available only if Troy Stacy incurred necessary expenses resulting from direct loss to property due to a cause covered by the policy.  Troy Stacy alleges that the COVID-19 virus caused the "physical loss" of and physical "damage" to its insured properties by "corrupting, attaching to, and physically altering . . . [their] surfaces" and by "necessitating remedial measures" such as cleaning.  (Appellant Br. 4–5.)

We have already considered and ruled on similar insurance policy provisions under Ohio law in the context of the COVID-19 pandemic.  In *Dakota Girls, LLC v. Philadelphia Indemnity Insurance Co.*, 17 F.4th 645, 647 (6th Cir. 2021), a group of private preschools alleged that their insurance company wrongfully denied their COVID-related claims for lost business income and extra expenses.  Their insurance policy, similar to Troy Stacy's, covered "direct physical loss of or damage to" their properties.  *Id.*  The district court granted the insurance company's motion to dismiss, and we affirmed.  *Id.*

Specifically, we concluded that a "loss" requires the insured to show "either destruction of the property or the owner's dispossession[.]"  *Id.* at 649 (citing *Santo's Italian Café*, 15 F.4th at 404).  We also determined that "damage" requires a "direct physical alteration of the property[.]"  *Id.*  Accordingly, the policy language "excludes from coverage . . . mere economic injury and loss of use[.]"  *Id.* (citation omitted).  Put simply, the physical loss or damage contemplated by the

policy is not the same as a loss of use due to the temporary, surface-level presence of a virus. *See id.* (citing *Santo's Italian Café*, 15 F.4th at 402).

V.

Finally, Troy Stacy contends it should be able to recoup losses under the civil authority coverage provision of its insurance policy. To do so, the policy prescribes three requirements: (1) something must cause damage to non-insured property; (2) a civil order must prohibit access to the insured property; and (3) a civil order must also prohibit access to the "area immediately surrounding the damaged property[.]" Troy Stacy alleges that its proximity to nearby hospitals—which it says also suffered direct physical loss or damage due to COVID-19 "in the same manner" that its property was damaged—demonstrates its eligibility to recover under this provision. (Appellant Br. 52.) But, as we have already detailed, Troy Stacy has not plausibly alleged "damage to property." If its own property was not damaged by COVID-19, neither were the hospitals. And because this is a necessary element to civil authority coverage, Troy Stacy has failed to state a claim for this coverage too.

VI.

The COVID-19 pandemic has caused hardship for many businesses across the country, and we are sympathetic to the challenges they have been forced to confront. *See Dakota Girls*, 17 F.4th at 653; *Santo's Italian Café*, 15 F.4th at 407. Nevertheless, we may not reconstruct the insurance policy's terms or grant Troy Stacy a contractual benefit it did not bargain for.

We affirm.