**ILLINOIS FARMERS INSURANCE COMPANY, Respondent,**

v.

**Janet Dawn REED, et al., Defendants,**

**Richard Peschong, et al., Petitioners, Appellants.**

No. C2–02–123.

Supreme Court of Minnesota.

June 12, 2003.

Sharon L. Vandyck, Mark H. Gruesner, Schwebel, Goetz & Sieben, P.A. Minneapolis, MN, for Petitioner/Appellant.

Matthew Robert Zahn, Gislason & Hunter, LLP, Minnetonka MN, for Respondent.

Michael A. Zimmer, Tewksbury, Kerfeld & Zimmer, P.A., Minneapolis, MN, for Defendant.

Wilbur W. Fluegel, Fluegel Law Office, Minneapolis, MN, for MTLA, Amicus Curiae.

## OPINION

GILBERT, Justice.

This case presents the issue of whether an insured's criminal conviction can be used by the insurance company to collaterally estop the victim of the crime from litigating in a subsequent civil action the issue of the insured's intent to determine whether the insured's homeowner's insurance policy provides coverage for the incident. Richard and Kimberly Peschong, individually and as parents and natural guardians of Jordan Peschong, and Jordan Peschong, a minor child, (appellants) brought suit against Janet Reed for the injuries Jordan incurred on May 25, 1999, while in Reed's care. Illinois Farmers Insurance Company (respondent), Reed's homeowner insurance provider, denied coverage and filed a complaint for declaratory relief with the Anoka County District Court naming Janet and James Reed, the

Peschongs and First Health as defendants. The district court denied respondent's motion for summary judgment and pursuant to Minn. R. Civ.App. P. 103.03(i), certified a legal question as important and doubtful. The court of appeals held that: (1) the collateral-estoppel effect of a conviction is not limited to situations in which a criminal defendant seeks to profit from the crime, and (2) Reed's conviction collaterally estopped relitigation of the issue of intent with respect to the intentional acts exclusion. *Ill. Farmers Ins. Co. v. Reed,* 647 N.W.2d 553, 568 (Minn.App.2002). The Peschongs petitioned this court for review, which was granted on October 15, 2002. We reverse and remand.

One-year-old Jordan Peschong was seriously injured on May 25, 1999, while being cared for by Janet Reed in the daycare that Reed operated in her home. As a result of the incident, Reed was charged with assault in the first degree (great bodily harm), Minn.Stat. § 609.221, subd. 1 (2002), and malicious punishment of a child (resulting in great bodily harm), Minn. Stat. § 609.377, subd. 6 (2002). The state alleged that Reed had shaken Jordan and that the shaking led to the severe, life-threatening injuries Jordan incurred. Reed claimed that the state could not meet its burden of proof to show the injuries were the result of "shaken baby syndrome" and that Jordan's injuries were the result of his falling backwards from a standing position onto the hard ceramic floor of her kitchen. Reed waived the right to a jury trial and agreed to a bench trial with the court acting as finder of fact. Following the bench trial, the district court issued a 90–page order including findings of fact, conclusions of law, and a guilty verdict on both charged counts.

Appellants filed a civil suit against Reed arising from the same incident that resulted in Reed's criminal convictions. Respon-

dent, Reed's homeowner insurance provider, filed a complaint for declaratory relief naming Janet and James Reed, the Peschongs and First Health as defendants and claiming that it had no obligation to defend, indemnify or otherwise provide benefits to Reed for the injuries suffered by Jordan Peschong. In that complaint, respondent provided the following rationale for denying coverage:

16. The Farmers Policy provides coverage for "bodily injury ... resulting from an occurrence." The term "occurrence" is defined in the Farmers Policy as "an accident including exposure to conditions which results during the policy period in bodily injury."

17. The Farmers Policy excludes coverage for bodily injury, which is either:

a. Caused intentionally by or at the direction of the **insured;** or

b. Results from any **occurrence** caused by an intentional act of any **insured** where the results are reasonably foreseeable.

18. Janet Dawn Reed intentionally caused Jordan D. Peschong's injuries, those injuries were reasonably foreseeable and those injuries are not the result of an "occurrence" as that term is defined in the Farmers Policy.

The district court issued an order and memorandum denying respondent's motion for summary judgment and certifying a question for the appellate courts under Minn. R. Civ.App. P. 103.03(i). The court framed the certified question as follows:

When interpreting an intentional act exclusion of a common liability policy, does Minnesota law permit criminal convictions to be used for collateral estoppel purposes in a subsequent civil case in situations other than those envisioned in *Travelers Insurance Co. v. Thompson,* 281 Minn. 547, 163 N.W.2d 289 (1969)[sic]—namely, where the criminal defendant seeks to profit from his/her crime in a subsequent civil proceeding?

The district court denied the motion for summary judgment believing that Minnesota law, under *Thompson,* allowed a criminal conviction to be used to estop a subsequent civil action only when the criminal attempted to profit from the crime. The court concluded it did not have the authority to expand the doctrine of collateral estoppel beyond the situation in *Thompson.* The court found that if collateral estoppel could apply to a situation other than that in *Thompson,* then all the requirements of collateral estoppel were met by the facts of this case.

The court of appeals answered the certified question in the affirmative, and reversed the district court. It held that collateral estoppel could be applied in situations other than that in *Thompson.* The court of appeals concluded that under the facts in the record, Reed's conviction for assault in the first degree collaterally estopped relitigation of the intent issue with respect to the intentional acts exclusion.

 "Certified questions are matters of law that we review de novo." *Conwed Corp. v. Union Carbide Chem. and Plastics Co., Inc.,* 634 N.W.2d 401, 406 (Minn. 2001). Under Minnesota law, collateral estoppel is appropriate when the following four elements are met:

(1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Ellis v. Minneapolis Comm'n on Civil Rights,* 319 N.W.2d 702, 704 (Minn.1982) (quoting *Victory Highway Village, Inc. v. Weaver,* 480 F.Supp. 71, 74 (D.Minn.1979)).

The certified question references *Travelers Insurance. Co. v. Thompson,* 281 Minn. 547, 163 N.W.2d 289 (1968). In *Travelers,* a number of insurance companies sought declaratory relief as to their liabilities to a beneficiary husband who had been convicted of murdering his wife. *Id.* at 548, 163 N.W.2d at 290. We held that the husband's judgment of conviction in the criminal case was conclusive as to the result in the civil action to determine his rights to the life insurance proceeds of his deceased wife. *Id.* at 555, 163 N.W.2d at 294. In so concluding, we granted a prior criminal conviction collateral estoppel effect "where the convicted defendant attempts by subsequent civil litigation to profit from his own crime, as where an arsonist seeks to recover insurance proceeds for damage caused by the fire which he was convicted of setting, or where a beneficiary convicted of homicide seeks to recover under the victim's life insurance policy." *Id.* at 552, 163 N.W.2d at 292.

Appellants argue that collateral estoppel, an equitable doctrine, should not be extended beyond the holding in *Thompson,* and is not appropriate in the present case. Appellants point out that in *Thompson,* this court precluded a convicted criminal from profiting from his crime; whereas, applying collateral estoppel under the facts present here would unfairly extend the doctrine to injured persons who were not parties to the preceding criminal trial.

Appellants cite as persuasive two cases from the Supreme Judicial Court of Massachusetts. The Massachusetts court issued two rulings on the same day that relate to the issue before this court. In

*Aetna Casualty & Surety Co. v. Niziolek,* 395 Mass. 737, 481 N.E.2d 1356, 1360 (1985), Massachusetts adopted the rule that "a party to a civil action against a former criminal defendant may invoke the doctrine of collateral estoppel to preclude the criminal defendant from relitigating an issue decided in the criminal prosecution." That ruling mirrored our decision in *Thompson. Thompson,* 281, Minn. at 555, 163 N.W.2d at 294. The second case released that day, *Massachusetts Property Insurance Underwriting Ass'n. v. Norrington,* 395 Mass. 751, 481 N.E.2d 1364 (1985), addressed the issue confronting us in the present case.

In *Norrington,* Sandra Thomas and John Person had a homeowner's insurance policy that excluded coverage for "bodily injury or property damage * * * which is expected or intended by the insured." *Id.* at 1365. Person shot and killed Thomas while the homeowner's policy was in effect.[1] He was then convicted of second-degree murder. Thomas's next of kin, Norrington, brought a wrongful death action against Person before the criminal trial. After Person was convicted, the insurance company brought a declaratory judgment action asking the court to declare that because the shooting was found to be intentional, the insurance company had no obligation to pursue settlement of the wrongful death action nor indemnify Person for a judgment against him in that case. *Id.* The Massachusetts court stated that for collateral estoppel to apply the issue decided in the preceding litigation must be identical, there must be a final judgment on the merits, and the party against whom estoppel is applied was the party or in privity with the party in the prior adjudication. *Id.* at 1366. The court

---

1. The victim's status as a party to the insurance contract was of no significance to the Massachusetts court's decision. *Norrington,* 481 N.E.2d at 1365 n. 2.

went on to conclude that collateral estoppel could not apply because "he [Norrington] was neither a party nor in privity with a party to the criminal case." *Id.* The court held that Norrington should not be precluded in the wrongful death action from attempting to show that Person neither intended nor expected to shoot Thomas. *Id.* at 1367.

The court noted, "the right of the injured party to have recourse to the indemnity promised by the insurer rises no higher than the right of the insured." *Id.* The court concluded, however, "that, even though MPIUA [insurer] could invoke collateral estoppel against Person [insured shooter], MPIUA cannot invoke that doctrine against Norrington." *Id.* The Massachusetts court based its ruling on the fact that the injured person had no opportunity to litigate whether the shooting was intentional or accidental and that fairness required that he have that opportunity. *Id.* at 1368. Finally, the court stated that denying collateral estoppel placed no undue burden on the insurer, because the insurer had not yet litigated the coverage question and only sought to benefit from a case to which it was not a party. *Id.*

We find the reasoning of the court in *Norrington* convincing. The fact that appellants have not had the opportunity to present their case to a court or jury is compelling. The two parties in the criminal prosecution were the state and Reed. The appellants were not parties to the criminal proceedings and have not had the opportunity to cross-examine Reed nor have they had the opportunity to present their own evidence or experts. A defendant's Fifth Amendment right not to testify in a criminal proceeding and the negative inference that can be drawn from exercising that right in a civil case may result in substantially different evidence being offered at the civil trial.

Respondent argues that we should determine the applicability of the doctrine of collateral estoppel by focusing on how the doctrine applies to Reed. Respondent asserts that the dominant trend among other jurisdictions is to invoke collateral estoppel to preclude recovery under an intentional acts exclusion from an insurer where the insured has been criminally convicted for the conduct at issue. The respondent also cites the Restatement (Second) of Judgments § 85 cmt. e (1982) to support that contention. The court of appeals relied on the following portions of the restatement:

With respect to issues determined in a criminal prosecution:

\* \* \* \*

(2) A judgment in favor of the prosecuting authority is preclusive in favor of a third person in a civil action:

(a) Against the defendant in the criminal prosecution as stated in § 29 [repudiating the mutuality rule with respect to the effect of a civil judgment].

*Reed,* 647 N.W.2d at 565 (quoting Restatement (Second) of Judgments § 85 cmt. e (1982)). The court of appeals then quoted Restatement (Second) of Judgments § 85 cmt. e, which explained, "long before the mutuality rule was repudiated in civil cases, well-reasoned decisions had extended the rule of preclusion to operate in favor of third persons where the first action is criminal and the second is civil." *Reed,* 647 N.W.2d at 565 (quoting Restatement (Second) of Judgments § 85 cmt. e (1982)).

The Restatement (Second) of Judgments § 85 cmt. e, however, does not address the circumstances present here, where the rights of a victim against the wrongdoer's insurance company are concerned. Rather, Restatement (Second) of Judgments § 85 cmt. e states that courts have estopped the criminal from benefiting from his crime, and have used estoppel in favor

of the third-person victim in a civil suit against the criminal defendant.

A different portion of the Restatement (Second) of Judgments § 85 informs our decision. Appellants and the amicus curiae brief submitted by the Minnesota Trial Lawyers in this case direct our attention to Restatement (Second) of Judgments § 85 cmt. f.

> *f. Judgment for prosecution: preclusion against third party.* Under some circumstances the criminal judgment may be preclusive as to issues not only against the defendant in the criminal case but also against those "in privity" with him, as privity is defined in §§ 46, 48, 56(*l* ), and 59–61, or analogous rules. The relationship with the criminal defendant must be sufficiently close that it would be unjust to allow the third party to prevail notwithstanding the judgment for the prosecution.

The following illustration follows comment f:

> D inflicts a blow on X as a result of which X dies. D is convicted of intentional homicide. P, administrator of X's estate, brings an action against D for wrongful death, alleging D's act was negligent. I had previously issued a policy of liability insurance to D, insuring liability for D's negligent acts but excluding intentional acts. In P's action against D, P is not precluded by the criminal conviction from showing that D's act was negligent rather than intentional.

Restatement (Second) of Judgments § 85 cmt. f, illus. 10.

The preceding illustration addresses the situation presented by the present case. It demonstrates that the Restatement (Second) of Judgments supports our conclusion that an insurer may not use an insured's criminal conviction to collaterally estop a subsequent civil suit brought by a third-party crime victim based on the intentional act exclusion within the policy.

Finally, we are concerned the appellants were not "given a full and fair opportunity to be heard." *Ellis*, 319 N.W.2d at 704. (citation omitted). In order to uphold the appellants' right to a fair and full hearing, we will not expand our *Thompson* ruling to these facts.

Reversed and remanded.

HANSON, J., took no part in the consideration or decision of this case.