SECURA SUPREME INSURANCE COMPANY, Respondent,

v.

M.S.M., et al., Defendants,

Jaclyn Patricia Larson, Appellant.

No. A07–1736.

Court of Appeals of Minnesota.

Sept. 2, 2008.

Susan D. Thurmer, Andrea E. Reisbord, Cousineau McGuire Chartered, Minneapolis, MN, for respondent.

Robert P. Christensen, Robert P. Christensen, P.A., Minneapolis, MN; and James E. Betz, James E. Betz, P.A., Anoka, MN; and Wilbur W. Fluegel, Fluegel Law Office, Minneapolis, MN, for appellant.

Considered and decided by WORKE, Presiding Judge; HALBROOKS, Judge; and STONEBURNER, Judge.

## OPINION

HALBROOKS, Judge.

Appellant Jaclyn Patricia Larson brought negligence claims against the insureds of respondent SECURA Supreme Insurance Company based on injuries that she sustained when the insureds' son attacked her. SECURA subsequently commenced a declaratory-judgment action, seeking to establish that it had no duty to

indemnify its insureds against Larson's claim due to a criminal-act exclusion in the insureds' homeowners' insurance policy. The district court agreed that the exclusion barred coverage and granted SECURA's motion for summary judgment. Larson now challenges that determination, contending that the district court erred by interpreting the criminal-act exclusion to preclude coverage for the injuries she sustained. Because we conclude that the district court did not err, we affirm.

## FACTS

Patrick and Suzanne McArdle and their son, M.S.M., are neighbors of appellant Jaclyn Larson. On the morning of August 12, 2004, M.S.M., who was then 14 years old, unlawfully entered Larson's residence and repeatedly stabbed her with a knife. Larson sustained grave injuries as a result of the attack but eventually recovered. The knife that M.S.M. used in the attack was part of a knife collection that the McArdles had given him. In September 2004, M.S.M. pleaded guilty and was convicted of attempted first-degree murder in an extended-jurisdiction-juvenile (EJJ) proceeding. M.S.M. is currently incarcerated in Utah.

In December 2005, Larson sued the McArdles, alleging that her injuries were the result of the couple's negligent supervision of M.S.M. and their negligent entrustment to him of a dangerous weapon (the knife used in the attack). The complaint also asserted a claim against M.S.M. for negligence or, in the alternative, assault and battery.

The McArdles tendered the defense of the lawsuit to SECURA, their homeowners' insurer. SECURA accepted the tender with respect to both McArdles, subject to a reservation of rights, but refused to defend M.S.M. In June 2006, SECURA brought a declaratory-judgment action to establish that it was not required to indemnify the McArdles against Larson's negligence claims based on a criminal-act exclusion contained in the homeowners' policy.

The criminal-act exclusion that SECURA relies on is found within the same paragraph, but set apart from, an intentional-act exclusion in the policy. The language of the criminal-act exclusion provides: "Medical [p]ayments to [o]thers do not apply to bodily injury or property damage ... [w]hich: ... (3) Results from the criminal acts of any insured." The policy also contains a severability clause. The severability clause is contained in a different section of the homeowners' policy than the criminal-act exclusion and states that "[t]his insurance applies separately to each insured." It is not disputed that the definition of "insured" under the policy encompasses both Patrick and Suzanne McArdle as well as M.S.M.

The McArdles subsequently entered into a *Miller–Shugart* settlement with Larson, assigning to her their right to contest SECURA's refusal to indemnify them under their homeowners' policy.[1] Both Larson and SECURA subsequently brought cross-motions for summary judgment regarding whether SECURA was required to indemnify the McArdles against Larson's negligence claims.

---

1. *See Miller v. Shugart,* 316 N.W.2d 729 (Minn.1982). *Miller v. Shugart* introduced a procedure whereby an insured tortfeasor, whose insurer is disputing coverage, admits liability, settles with the plaintiff, and assigns the insured-tortfeasor's right to contest insurance coverage to the plaintiff. The terms are then incorporated into a stipulated judgment against the tortfeasor. In consideration, the plaintiff typically agrees to satisfy any later-obtained judgment against the tortfeasor's insurer only and not against the tortfeasor in his or her personal capacity.

The district court granted SECURA's motion for summary judgment and denied Larson's. The district court determined that, as a matter of law, SECURA's insurance policy "bars coverage for any and all claims made by [ ] Larson." The criminal-act exclusion was the district court's sole basis in reaching this conclusion. This appeal follows.

## ISSUES

1. Must SECURA establish that M.S.M. intended to harm Larson when he attacked her before it can properly invoke the criminal-act exclusion?

2. Is there any substantive difference between the phrases "results from" and "arises out of" when used to describe the scope of the injuries for which coverage is precluded under the criminal-act exclusion?

3. Does the severability clause contained in the policy render ambiguous the criminal-act exclusion's prohibition of coverage for "any insured" if the exclusion is otherwise unambiguous?

## ANALYSIS

On an appeal from summary judgment, an appellate court determines (1) whether there are any genuine issues of material fact and (2) whether the district court erred in its application of the law. *Olmanson v. LeSueur County*, 693 N.W.2d 876, 879 (Minn.2005). The parties here agreed to reserve consideration of various factual issues for the purposes of SECURA's declaratory-judgment action. Therefore, the only issues before the district court concerned the proper interpretation and application of the language of SECURA's policy. This question presents a legal issue, which we review de novo. *See Bjerke v. Johnson*, 742 N.W.2d 660, 664 (Minn.2007) (when the relevant material facts in a summary-judgment appeal are not in dispute, the district court's conclusions of law are reviewed de novo); *Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 609 (Minn.2001) (interpretation and application of an insurance policy to the facts are questions of law).

The insured bears the burden of demonstrating coverage under an insurance policy. *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn.2006). But if this burden is met, it is the insurer that must establish the applicability of exclusions. *Id.* Furthermore, all "exclusions are construed strictly against the insurer." *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 880 (Minn.2002).

"General principles of contract interpretation apply to insurance policies." *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn.1998). When the language in an insurance policy is unambiguous, the language must be given its plain and ordinary meaning. *Medica, Inc. v. Atl. Mut. Ins. Co.*, 566 N.W.2d 74, 77 (Minn.1997). But "[i]f policy language is ambiguous, the ambiguity must be resolved in the insured's favor." *Marchio v. W. Nat. Mut. Ins. Co.*, 747 N.W.2d 376, 380 (Minn.App.2008) (quotation omitted). This is done by interpreting the ambiguity in accordance with the reasonable expectations of the insured. *Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 47–48 (Minn. 2008). Only in exceptional circumstances, when coverage is significantly different than what is reasonably expected and sufficient notice of this difference is lacking, should the reasonable-expectation doctrine apply, absent ambiguity in an insurance policy. *Id.* at 49. Furthermore, courts should be vigilant against finding ambigui-

ty when none actually exists. *Marchio*, 747 N.W.2d at 380.

In this appeal, we are required to determine whether SECURA's criminal-act exclusion, which states that it is not responsible for bodily injury that "[r]esults from the criminal acts of any insured," precludes it from its obligation to otherwise indemnify the McArdles against Larson's negligence claims. To fully answer this question, we must also examine how the severability clause affects application of the exclusion. The parties' disagreement concerning these two clauses involves the interpretation and application of three separate terms or phrases: (1) "criminal acts," (2) "results from," and (3) "any insured" when applied in conjunction with the severability clause.

## I.

■ The first point of contention concerns the relationship between M.S.M.'s conviction of attempted first-degree murder and the meaning of the phrase "criminal act" in the exclusion. SECURA's insurance policy does not define "criminal act" within the exclusion. Larson argues that, due to M.S.M.'s alleged mental illness, it is an open question whether he had the ability to form the intent to harm her when he perpetrated the attack. SECURA asserts that M.S.M.'s intent to harm Larson is not relevant under applicable case law.

Larson focuses on the cases of *Ill. Farmers Ins. Co. v. Reed*, 662 N.W.2d 529 (Minn.2003), and *B.M.B. v. State Farm Fire & Cas. Co.*, 664 N.W.2d 817 (Minn. 2003), in support of her argument. In *B.M.B.*, B.M.B. was sexually assaulted by her uncle, who maintained insurance coverage through State Farm. *B.M.B.*, 664 N.W.2d at 819. In ensuing litigation, State Farm denied any duty to indemnify or defend B.M.B.'s uncle based on an in-

tentional-act exclusion contained in its insurance policy. *Id.* at 820. The uncle later assigned his right to contest coverage under the policy to B.M.B., and she brought a claim against State Farm in federal court alleging that State Farm breached its duty to defend and indemnify her uncle. *Id.* The federal district court certified a question to the supreme court regarding whether a plaintiff seeking to recover under an insurance policy can attempt to demonstrate that the tortfeasor's acts were unintentional due to mental illness and thus outside the scope of an intentional-act exclusion. *Id.* at 821. The Minnesota Supreme Court answered in the affirmative, holding that a third-party plaintiff is permitted to contest an insurer's denial of coverage to an insured tortfeasor based on an intentional-act exclusion by demonstrating that the tortfeasor's mental illness rendered his actions "unintentional" and, thus, outside the scope of the exclusion. *Id.* at 819–20.

In *Reed*, appellants' young child was injured after his babysitter, Reed, violently shook him. *Reed*, 662 N.W.2d at 530. Reed was convicted of felony first-degree assault and felony malicious punishment of a child for her actions. *Id.* In a later civil action, Reed's insurer refused to indemnify her based on the policy's intentional-act exclusion. *Id.* Reed's insurer argued that Reed's criminal convictions collaterally estopped the appellants from relitigating the issue of whether Reed intended to injure their child. *Id.* at 533. But the supreme court rejected this argument, stating that "an insurer may not use an insured's criminal conviction to collaterally estop a subsequent civil suit brought by a third-party crime victim based on the intentional act exclusion within the policy." *Id.* at 534.

Larson argues that these cases permit her to raise the issue of M.S.M.'s intent. But there is a critical distinction between

this case and both *Reed* and *B.M.B.* In those cases, the clause at issue was an intentional-act exclusion. Here, the clause at issue is a criminal-act exclusion. Within the context of a criminal-act exclusion, the critical inquiry concerns the criminality of the conduct purportedly justifying invocation of the clause. The language of SEC-URA's criminal-act exclusion says nothing about the intent of the person engaging in the criminal act. And we decline to graft onto the clause's plain language an additional, separate inquiry regarding the intent of the tortfeasor in causing the injury. *Liebenstein v. Allstate Ins. Co.*, 517 N.W.2d 73, 75 (Minn.App.1994).

In *Liebenstein*, Allstate asserted that its criminal-act exclusion precluded it from having to indemnify its tortfeasor-insured, who was convicted of assaulting Liebenstein. *Id.* at 74. Liebenstein countered that "a criminal conviction alone cannot trigger this exclusion," claiming that it applied only if Allstate could demonstrate that its insured "intended to injure him" in the course of the assault. *Id.* at 75. But this court rejected Liebenstein's argument. We noted that the criminal-act exclusion contained no language regarding intent, in contrast to the separate intentional-act exclusion in the policy. Thus, we held that "the plain language of the [criminal-act exclusion] indicates that coverage is excluded for injuries resulting from a criminal act, regardless of intent." *Id.*

■ *Liebenstein* establishes that a criminal-act exclusion in an insurance policy is not limited to criminal acts involving a perpetrator's intent to harm the victim.

Instead, such exclusions extend to criminal acts causing injury even when the perpetrator possessed no specific intent to injure the victim.[2] This interpretation is consistent with the majority of courts in other jurisdictions that have considered this question. *See, e.g., Allstate Ins. Co. v. Brown,* 16 F.3d 222, 226 (7th Cir.1994) (Allstate's criminal-act exclusion encompassed criminal recklessness); *Hooper v. Allstate Ins. Co.,* 571 So.2d 1001, 1003 (Ala.1990) (stating that the criminal-act exclusion "excluded coverage for injuries resulting from criminal acts by the insured, regardless of whether the insured intended to commit the act or to cause the harm"); *Allstate Ins. Co. v. Schmitt,* 238 N.J.Super. 619, 570 A.2d 488, 492 (1990) (stating that the "words 'criminal act' are not modified by any descriptive culpability requirement"); *Allstate Ins. Co. v. Peasley,* 131 Wash.2d 420, 932 P.2d 1244, 1249 (1997) (refusing to restrict the meaning of the term "'criminal acts' to just intentional criminal acts").

■ In sum, in order to trigger a criminal-act exclusion, an insurer must establish that the insured committed a criminal act; but it is not required to also show that an insured possessed an intent to injure. Therefore, we conclude that M.S.M.'s conduct falls within the meaning of the term "criminal acts" as used in the exclusion, regardless of whether or not he intended to harm Larson.

## II.

■ The second issue raised by the parties is whether there is any difference

2. We note that such a conclusion does not mean that every offense as defined by the laws of this state necessarily falls within the term "criminal acts." *See generally Allstate Ins. Co. v. Burrough,* 914 F.Supp. 308, 312 (W.D.Ark.1996), *aff'd,* 120 F.3d 834 (8th Cir. 1997) (stating that "[s]ome courts have either limited the application of the criminal acts exclusion to technical violations, public welfare crimes, and criminal negligence, or they have stated they might be willing to do so" and listing cases). We also do not read *Liebenstein* to hold, nor do we hold today, that the principles of collateral estoppel or res judicata apply under the circumstances.

between language in an insurance policy barring coverage for injury that "results from" certain conduct versus injury that "arises out of" that same conduct. Both the supreme court and this court have previously addressed insurance exclusions for injuries "arising out of" various conduct. *E.g., St. Paul Sch. Dist. No. 625 v. Columbia Transit Corp.*, 321 N.W.2d 41 (Minn.1982); *Fillmore v. Iowa Nat'l Mut. Ins. Co.*, 344 N.W.2d 875 (Minn.App.1984).

Larson argues that the phrase "results from" should be construed more narrowly than the term "arising out of." She contends that the McArdles' negligence in failing to supervise M.S.M. or in entrusting a dangerous weapon to him is the underlying cause of her injuries. Therefore, she reasons, this negligence, and not M.S.M.'s criminal conduct, must be the focus under the meaning of this phrase. SECURA asserts just the opposite: that the phrase "results from" is the equivalent of the term "arising out of" and that it should be given an equally broad interpretation to preclude coverage for Larson's negligence claims. The district court agreed with SECURA and determined that Larson's injuries "resulted from" M.S.M.'s attack within the meaning of the criminal-act exclusion, notwithstanding any negligence on the part of the McArdles. We agree.

Larson's claim that there is a substantive difference between the phrases "arising out of" and "results from" is not supported by the relevant case law. In *Mork Clinic v. Fireman's Fund Ins. Co.*, a case involving a claim for damages caused by the sexual misconduct of a physician, we addressed the issue of whether the phrases "results from" and "arising out of" have different meanings. 575 N.W.2d 598, 602–03 (Minn.App.1998). We concluded that, based on the plain and ordinary meaning of the words, the phrases are the same. *Id.* at 602. Courts from other jurisdictions

have also treated these two phrases as interchangeable and have interpreted them in an equally broad fashion. *See Allstate Ins. Co. v. Steele*, 74 F.3d 878, 881 (8th Cir.1996) (in applying Minnesota law, treating the phrase "results from" in the insurance contract at issue as the equivalent of the phrase "arising out of"); *St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*, 101 Cal. App.4th 1038, 124 Cal.Rptr.2d 818, 826 (2002) (noting that numerous cases within the state "provide a clear illustration of the consistently broad interpretation given ... to phrases such as 'arising out of' ... and 'resulting from' " when contained in insurance contracts). Furthermore, the plain meaning of the term "arise" indicates that it carries the same meaning as the word "result." *See American Heritage Dictionary of the English Language* 99 (3d ed.1992) (definition of "arise" includes "result"). In short, we can derive no principled basis on which to treat these two phrases differently.

■ Larson argues that *Redeemer Covenant Church of Brooklyn Park v. Church Mut. Ins. Co.*, 567 N.W.2d 71 (Minn.App.1997), *review denied* (Minn. Oct. 1, 1997), stands for the proposition that "arising out of" is a broader phrase than "results from." But *Redeemer* does not address how the phrase "results from" should be interpreted. There, this court noted that excluding coverage for injuries "arising out of" a particular type of act sweeps more broadly than merely excluding coverage for the particular type of act. *Redeemer*, 567 N.W.2d at 77–78. Accordingly, to remove any further uncertainty regarding this particular issue, we hold that there is no substantive difference between the phrases "arising out of" and "results from" when they are used to describe the scope of the injuries for which a

criminal-act exclusion in a homeowners' policy bars coverage.

We therefore conclude that the district court correctly determined that Larson's injuries "resulted from" M.S.M.'s attack. This court's decision in *Amos v. Campbell,* which involved an exclusion prohibiting coverage for any claims "arising out of . . . assault or battery" is particularly relevant to this determination.[3] *Amos,* 593 N.W.2d at 267. In *Amos,* a teacher sexually assaulted a student, and the school district was sued for, among other things, negligent supervision. *Id.* at 265. The school district entered into a *Miller–Shugart* settlement with Amos, assigning to him its right to contest insurance coverage under its policy. *Id.* The district court subsequently dismissed Amos's claim against the school district's insurer based on an assault-and-battery exclusion contained in the insurance policy. *Id.* at 266. On appeal, Amos argued to this court that the district court had erred in interpreting the exclusion, contending that the focus in applying the "arising out of" language contained in the exclusion should be on the school district's negligent conduct. *Id.* at 265–67. Amos asserted that because the school district's negligence did not directly result in either assault or battery, the exclusion did not apply under the circumstances. *Id.* at 266–67. We rejected this argument, stating that "the policy's 'arising out of' language requires [us] to instead focus on the direct cause of appellant's original claim-the sexual assault." *Id.* at 267.

Our conclusion in *Amos* was based on examination of cases addressing similar disputes, all of which concluded that the "arising out of" language is satisfied if there is a casual connection between the conduct identified in the exclusion and the injuries for which compensation is being sought. *Id.* at 267–68; *see also Meadowbrook, Inc. v. Tower Ins. Co.,* 559 N.W.2d 411, 419 (Minn.1997) ("Typically, this court has defined the words 'arising out of' in an insurance policy to mean 'causally connected with' and not 'proximately caused by.'"); *Roloff v. Taste of Minn.,* 488 N.W.2d 325, 326 (Minn.App.1992), *review denied* (Minn. Oct. 20, 1992) (stating that "arising out of" language "unambiguously excludes coverage when a claim is causally related to" the conduct described in the exclusion clause—there assault and battery—even if the actual claim is for negligence); *Ross v. City of Minneapolis,* 408 N.W.2d 910, 912 (Minn.App.1987) (stating that the "term 'arising out of' requires only a causal connection; it does not require proximate cause" and concluding that the district court's focus on the negligence theory under which the plaintiff brought his claim was error in applying a coverage exclusion for injury arising out of an assault or battery), *review denied* (Minn. Sept. 23, 1987).

Larson's injuries were undeniably causally connected to M.S.M.'s criminal conduct in attacking her. As such, Larson's injuries "result[ed] from" this criminal act, notwithstanding the fact that the McArdles' negligence may have also contributed to the same injuries.[4] Accordingly, the

---

**3.** We acknowledge that the exclusionary clause in *Amos* contained the "arising out of" language and not the "results from" language that we have here. But because we have already concluded that there is no meaningful difference between these two terms, reliance on *Amos* is proper.

**4.** We note that it is important to distinguish as separate concepts the causation element of a negligence claim from the phrase "results from" or "arising out of" as used in an insurance policy. The most direct cause of an injury may not be the only cause in the context of a negligence claim. *See Mork Clinic,* 575 N.W.2d at 600–01 (distinguishing be-

district court correctly interpreted and applied this phrase in SECURA's policy to allow invocation of the criminal-act exclusion.

## III.

■ Larson's third claim is that the exclusion of coverage for all insureds for bodily injury resulting from the criminal acts of "any insured" is inconsistent with the policy's severability provision, which states that "[t]his insurance applies separately to each insured." Larson argues that this purported inconsistency creates an ambiguity regarding whether SECURA must indemnify the McArdles in regard to her negligence claims. As a result, she contends that the criminal-act exclusion must be read narrowly and in conformance with the McArdles' reasonable expectation of separate coverage. We disagree.

In the absence of a severability clause, the supreme court has stated that an exclusion prohibiting coverage for all insureds, including innocent insureds, based on the wrongful or intentional acts of "any insured" is not ambiguous. *See Watson v. United Servs. Auto. Ass'n,* 566 N.W.2d 683, 689 (Minn.1997) (stating that, without any mention of a severability clause, "[c]ourts have found no ambiguity ... in policies which exclude from coverage the intentional or fraudulent acts of 'you or any other insured,' 'any insured,' and 'an insured' "). Larson concedes this point but argues that the presence of a severability clause in the policy alters the conclusion. For guidance on this issue, we look to the supreme court's reasoning in *Travelers Indem. Co. v. Bloomington Steel & Supply Co.,* 718 N.W.2d 888 (Minn. 2006).

In *Bloomington Steel,* Travelers provided insurance to Bloomington Steel, a cor-

poration whose sole stockholder was Cecil Reiners. *Bloomington Steel,* 718 N.W.2d at 892. The policy contained an intentional-act exclusion that precluded coverage for bodily injury "expected or intended from the standpoint of *the* insured." *Id.* (emphasis added). The policy also contained a severability clause. *Id.* Reiners assaulted another individual, who then sued Reiners and Bloomington Steel. *Id.* Travelers invoked the intentional-act exclusion in response to the claims against both Reiners and Bloomington Steel, but the supreme court held that the exclusion could not be used to deny coverage to Bloomington Steel. The supreme court stated that, when applying the exclusion separately to the company as required by the severability clause, the corporate entity was "the insured" for purposes of application of the policy. *Id.* at 894–95. Because the company, as "the insured," did not intend or expect Reiners to commit the assault, the clause did not vitiate its insurance coverage. *Id.* Only Reiners expected or intended the assault, and thus Travelers could invoke the exclusion only against him. *Id.*

In its discussion, the supreme court indicated that Travelers could have structured its insurance policy to enable it to invoke the intentional-act exclusion against Bloomington Steel despite the severability clause. To do so, the supreme court stated that Travelers could have used the terms "any insured" or "an insured" instead of "the insured" in the exclusion. *Id.* at 895. The supreme court opined that these other terms "would have *unambiguously* excluded coverage" for the company. *Id.* (emphasis added).

■ While this language in *Bloomington Steel* is admittedly dicta and, there-

tween causation as an element of a negligence claim and injuries that arise out of certain

conduct in the context of insurance-policy exclusions).

fore, not determinative, supreme court dicta is given considerable weight when it expresses the opinion of the court. *In re Estate of Bush*, 302 Minn. 188, 207, 224 N.W.2d 489, 501 (1974); *see also Simons v. Shiltz*, 741 N.W.2d 907, 910 (Minn.App. 2007) (relying on dicta in a supreme court decision to reach its holding), *review denied* (Minn. Feb. 19, 2008). We agree with the court's analysis in *Bloomington Steel* and adopt it here. Use of the phrase "any insured" in SECURA's severability clause does not create ambiguity when applying the exclusion.

A simple application of the policy reinforces our conclusion that no ambiguity is created when the two clauses interact. When applying the criminal-act exclusion to Patrick McArdle alone, as the severability clause requires, the plain and unambiguous result is the exclusion of coverage for Larson's negligence claim because the bodily injuries that her claim is premised on "result[ed] from" the "criminal acts" of "any insured," with the "any insured" being M.S.M. The same result occurs when the policy is applied separately to Suzanne McArdle. The act of applying the policy separately to each insured does not alter or create ambiguity in the substance or sweep of the exclusion. Because there is no ambiguity, there is no basis for application of the reasonable-expectation doctrine. *Carlson*, 749 N.W.2d at 49. Accordingly, we conclude that the district court properly determined that SECURA's denial of coverage based on the criminal-act exclusion is not altered by the language of the policy's severability provision.

## DECISION

The district court correctly interpreted and applied the phrases "criminal acts," "results from," and "any insured" as contained in the criminal-act exclusion coverage of the McArdles' homeowners' policy.

Because the exclusion precludes insurance coverage for Larson's injuries that she sustained when M.S.M. attacked her, the district court properly granted SECURA's motion for summary judgment.

**Affirmed.**