Bruce KASTNING, et al., Appellants,

v.

STATE FARM INSURANCE COMPANIES, Respondent.

No. A12–0584.

Court of Appeals of Minnesota.

Sept. 24, 2012.

Jason D. Pederson, Fuller, Wallner, Cayko & Pederson, Ltd., Bemidji, MN, for appellants.

Gregory E. Kuderer, Fairmont, Minnesota; and Kay N. Hunt, Lommen Abdo Cole King Stageberg PA, Minneapolis, MN, for respondent.

Considered and decided by WORKE, Presiding Judge; HOOTEN, Judge; and COLLINS, Judge.*

## OPINION

HOOTEN, Judge.

Appellants challenge the district court's summary-judgment dismissal of their claim for uninsured motorist coverage under a policy issued by respondent, arguing that the farm tractor with which they collided was an uninsured "motor vehicle" within the meaning of their policy and, alternatively, that they are entitled to coverage under the reasonable-expectations doctrine. We affirm.

## FACTS

On July 2, 2010, appellant Bruce Kastning was driving a 1996 Chevrolet pickup truck when it collided with a John Deere 3020 farm tractor with an attached disc mower driven by Raymond Schenk in Faribault County. The collision occurred as Bruce Kastning was driving northbound on Highway 169 and Schenk, who was driving the farm tractor northbound on the right shoulder of Highway 169, made a left turn across Bruce Kastning's lane of traffic.

---

Bruce Kastning's wife, appellant Deloris Kastning, was in the front seat of the pickup truck and was injured. Appellants brought an action for damages against Schenk for Mrs. Kastning's personal injuries and for Mr. Kastning's loss of consortium.

Schenk had neither automobile nor general liability insurance on his farm tractor. Appellants' pickup truck was insured by respondent State Farm Insurance Companies under a policy which included uninsured motorist coverage. After their claim for uninsured motorist benefits was denied by respondent, appellants brought this breach-of-contract action for damages against respondent.

Respondent moved for summary judgment, asserting that appellants are not entitled to uninsured motorist benefits because a farm tractor is not a "motor vehicle" under the Minnesota No–Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41–.71 or the uninsured motorist section of the policy. Appellants opposed the motion, arguing that: (1) the No–Fault Act's definition of a "motor vehicle" is inapplicable; (2) a farm tractor is a "motor vehicle" under the uninsured motorist section of the policy; and (3) in the alternative, the issue of whether a farm tractor is a "motor vehicle" is a fact issue precluding summary judgment. In support of their opposition to summary judgment, appellants submitted an affidavit of Lanny Berke, a mechanical engineer, who states that a farm tractor: (1) was "designed and manufactured to serve as a versatile, multiple purpose machine"; (2) was "not designed or adapted exclusively for agricultural, horticultural, or livestock operations"; and (3) "was designed and commonly used for snow plowing, general construction, road construction, road maintenance and general lifting." Appellants alternatively argued that if a farm tractor

is not a "motor vehicle" under the policy, they are entitled to seek recovery under the reasonable-expectations doctrine.

After a hearing, the district court granted respondent's motion for summary judgment, concluding, as a matter of law, that a farm tractor is not a "motor vehicle" as defined under the No–Fault Act or the policy. The district court also concluded that the doctrine of reasonable expectations is not applicable. This appeal follows.

## ISSUES

1. Did the district court err in holding that a farm tractor is not a "motor vehicle" as defined in the Minnesota No–Fault Automobile Insurance Act or the uninsured motorist coverage of appellants' insurance policy with respondent?

2. Did the district court err in holding that the doctrine of reasonable expectations is inapplicable to appellants' claim for relief?

## ANALYSIS

On appeal from summary judgment, this court examines the record to determine whether any genuine issues of material fact exist and whether the district court erred in applying the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990). No genuine issue of material fact exists when a party fails to present evidence that is "sufficiently probative with respect to an essential element of the . . . party's case to permit reasonable persons to draw different conclusions." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn.1997). We view the evidence in the record "in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

*Appellants' Claim for Uninsured Motorist Benefits*

■ "Appellate courts review district court interpretations of insurance contracts and statutes de novo." *Brua v. Minnesota Joint Underwriting Ass'n,* 778 N.W.2d 294, 300 (Minn.2010). "If the meaning of a statute is unambiguous, we interpret the statute's text according to its plain language. If a statute is ambiguous, we apply other canons of construction to discern the legislature's intent." *Id.* (citation omitted). When interpreting statutory provisions, our goal is to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2010).

■ "The insured bears the burden of demonstrating coverage under an insurance policy." *SECURA Supreme Ins. Co. v. M.S.M.,* 755 N.W.2d 320, 323 (Minn.App. 2008), *review denied* (Minn. Nov. 18, 2008). "General principles of contract interpretation apply to insurance policies." *Lobeck v. State Farm Mut. Auto. Ins. Co.,* 582 N.W.2d 246, 249 (Minn.1998). "When the language in an insurance policy is unambiguous, the language must be given its plain and ordinary meaning. But if policy language is ambiguous, the ambiguity must be resolved in the insured's favor." *SECURA,* 755 N.W.2d at 323 (citation and quotation omitted). "A contract is ambiguous if its language is reasonably susceptible to more than one interpretation." *Brookfield Trade Ctr. Inc. v. Cnty. of Ramsey,* 584 N.W.2d 390, 394 (Minn.1998).

Respondent's policy for uninsured motorist coverage provides:

■ *We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle.* The *bodily injury* must be:

1. sustained by an *insured;* and

2. caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle* as a *motor vehicle* or *motorcycle.*

The policy's definition of a "motor vehicle" is a self-propelled vehicle:

1. required to be registered by Chapter 168 of the Minnesota Statutes;

2. designed for use on public highways; and

3. which has more than 3 wheels.

Under the Minnesota No–Fault Automobile Insurance Act, automobile insurance contracts covering motor vehicles registered or principally garaged in Minnesota must provide for uninsured motorist coverage. Minn.Stat. § 65B.49, subd. 3a(1). " 'Uninsured motorist coverage' means coverage for the protection of persons insured under that coverage who are legally entitled to recover damages for bodily injury from owners or operators of uninsured motor vehicles...." Minn.Stat. § 65B.43, subd. 18. The No–Fault Act defines a "motor vehicle" as

every vehicle, other than a motorcycle or other vehicle with fewer than four wheels, which (a) is required to be registered pursuant to chapter 168, and (b) is designed to be self-propelled by an engine or motor for use primarily upon public roads, highways or streets in the transportation of persons or property.

*Id.,* subd. 2.

Both the No–Fault Act and the policy define "motor vehicle" using a three-part definition, of which all elements must be satisfied in order for a vehicle to be a "motor vehicle." It is undisputed that because a farm tractor has four wheels, that element is satisfied.

### 1. Requirement of Registration

The No–Fault Act and the policy both define a "motor vehicle," in part, as a

vehicle that is required to be registered under chapter 168 of the Minnesota Statutes. Minn.Stat. § 168.09, subd. 1 (2010) requires that all motor vehicles operated upon public streets or highways be registered, except those exempted by law in section 168.012. Chapter 168 defines "motor vehicle," in relevant part, as "any self-propelled vehicle designed and originally manufactured to operate primarily on highways." Minn.Stat. § 168.002, subd. 18(a) (2010).

Schenk's farm tractor was not designed or manufactured to operate primarily on highways. It has no cab and only one seat for the operator, no passenger seating, and the only storage is a compartment the size of a toolbox. While the farm tractor has lights that illuminate for nighttime operation, it has no headlights, brake lights, signal lights, mirrors, or horn. The farm tractor can only reach a speed of about 30 miles per hour, well below highway and freeway speeds, and normally has a slow moving vehicle sign on it. The farm tractor has a front-end loader and a three-point hitch to which a disc mower and hay bale carrier can be attached.

Appellants contend that the farm tractor is subject to registration under chapter 168 because the statutory definition of "motor vehicle" does not specifically exclude it from the definition of a "motor vehicle" or from the requirement of registration. This argument is unavailing. The definition does not identify either specific types or models of vehicles in defining "motor vehicle."

Appellants also point to the statutory definitions of "tractor" and "truck-tractor" in chapter 168 to support their argument that a farm tractor is a "motor vehicle" subject to registration. Appellants contend that because the chapter's definitions refer to a "tractor" and "truck-tractor" as "motor vehicles," this court must presume that a farm tractor is a "motor vehicle" subject to registration. *See* Minn.Stat. § 168.002, subd. 34 (defining "tractor" in relevant part as "any motor vehicle designed or used for drawing other vehicles but having no provision for carrying load independently") and Minn.Stat. § 168.002, subd. 38 (defining in part a "truck-tractor" as "a trailer, mounted on wheels, that is designed to provide temporary living quarters during recreation, camping, or travel").

But this argument ignores that (1) the definitions of a "motor vehicle" in the No-Fault Act and the policy define a "motor vehicle" as a vehicle required to be registered pursuant to chapter 168, and (2) the plain language of Minn. Stat. § 168.002, subd. 18, which define a "motor vehicle" subject to registration as a vehicle "designed and originally manufactured to operate primarily on highways." The legislature's definitions of "tractor" and "truck-tractor" elsewhere in chapter 168 do not demonstrate legislative intent to include a farm tractor within chapter 168's definition of "motor vehicle" for purposes of the registration requirement. *See Programmed Land, Inc. v. O'Connor,* 633 N.W.2d 517, 527 (Minn.2001) (stating that courts will not construe one statute to abrogate another involving the same subject matter without clear legislative intent). Unlike a farm tractor, a "tractor" and a "truck-tractor," were designed and originally manufactured to operate primarily on highways.

Appellants also argue that because Schenk occasionally used his farm tractor as a mode of personal transportation upon the highways, his farm tractor does not fall under the "farm vehicle" exception to registration set forth in chapter 168. However, Minn.Stat. § 168.012, subd. 2 (2010), which provides for the farm-vehicle exception from registration under chapter 168,

anticipates that such "implements of husbandry" will be temporarily used upon the highway in hauling "agricultural products or necessary commodities used on the farm from said farm to and from the usual marketplace of the owner." By the plain language of the statute, such temporary movements of such implements of husbandry upon the highways do not convert them into "motor vehicles" for purposes of registration.

Because a farm tractor is not subject to registration under chapter 168, we conclude that, as a matter of law, a farm tractor is not a "motor vehicle" under either the No–Fault Act or the policy. *See Johnson v. Cummiskey,* 765 N.W.2d 652, 657 (Minn.App.2009) (declaring that "motor vehicles" are the only class of vehicle that the No–Fault Act requires to be covered by uninsured motorist coverage and that motorcycles, school buses, farm tractors, all-terrain vehicles, and marked patrol cars "are exempt from the No–Fault Act's general applicable coverage requirements.")

### 2. *Designed for Use on a Public Highway*

The policy defines a "motor vehicle," in relevant part, as a self-propelled vehicle "designed for use on public highways." The No–Fault–Act defines a "motor vehicle," in relevant part, as a vehicle "designed ... for use *primarily* upon public roads, highways or streets in the transportation of persons or property." Minn.Stat. § 65B.43, subd. 2 (emphasis added).

Concerning this element, the district court concluded that the policy's language is not ambiguous. While acknowledging that the policy offers broader coverage than the No–Fault Act in that the policy definition does not require a design for use "primarily" upon public roads, the district court concluded that a farm tractor fails to

satisfy this element even under the policy's broader definition because it was not designed for use on the public highways.

We agree. As we have already noted, the farm tractor has no cab and only one seat for the operator; no passenger seating; one storage compartment the size of a toolbox; and no headlights, brake lights, signal lights, mirrors, or horn. The highest speeds that can be reached by the farm tractor are incompatible with highway driving and the tractor lacks design elements that would enable it to travel safely, effectively, and comfortably on public highways.

Appellants assert that the policy's phrase "designed for use on public highways" is ambiguous and must therefore be construed in their favor. We disagree. *Stepec v. Farmers Ins.,* 301 Minn. 434, 437, 222 N.W.2d 796, 798 (1974), held that snowmobiles were not "motor vehicles" under the Safety Responsibility Act, which defined "motor vehicle" at that time as "every self-propelled vehicle which is designed for use upon a highway, including trailers and semi-trailers designed for use with such vehicles, except ... farm tractors." The court applied the plain and unambiguous meaning of "designed," stating that "the word 'designed' as defined in [the dictionary] means 'to plan or produce with special intentional adaptation to a specific end.'" *Id.* The court stated, "as we construe the word 'designed,' it is a vehicle intended and adapted for the purpose of 'use upon a highway.'" *Id.* Here, the same phrase, "designed for use on public highways," is included in the definition of "motor vehicle" in the policy. Under the same rationale utilized in *Stepec,* we conclude that this language is unambiguous.

Second, appellants argue that whether the farm tractor driven by Schenk was "designed for use on public highways" is a

question of fact precluding summary judgment. But evidence that Schenk at times used the tractor on the highway is insufficient to create an issue of fact as to whether the farm tractor was "designed for use on public highways." *See DLH, Inc.*, 566 N.W.2d at 71 (stating no issue of fact exists when party opposing summary judgment presents no evidence that would "permit reasonable persons to draw different conclusions").

Third, appellants assert that the district court disregarded their mechanical engineer's affidavit regarding whether the tractor was "designed for use on public highways." However, since the language of the policy is unambiguous in that a motor vehicle must be "designed for use" on a public highway and the affidavit does not indicate that the farm tractor was designed or produced with the specific intention that it was to be utilized on a public highway, the affidavit does not create a fact issue. Accordingly, we hold, as a matter of law, that a farm tractor is not a "motor vehicle" under the No–Fault Act or the policy. Our conclusion is consistent with our holding in *Great Am. Ins. Co. v. Golla,* in which we considered whether a farm tractor was a "motor vehicle" for purposes of the Safety Responsibility Act. 493 N.W.2d 602, 604–05 (Minn.App.1992), *superseded by statute as recognized in Vee v. Ibrahim,* 769 N.W.2d 770, 774–75 (Minn. App.2009), *review denied* (Minn. Sept. 29, 2009). Because the Safety Responsibility Act did not contain a definition of "motor vehicle," we applied the definition of "motor vehicle" in the No–Fault Act and concluded that a farm tractor is not a "motor vehicle" under the No–Fault Act's definition because such tractor is not subject to registration under chapter 168 and not designed for use primarily upon public highways. *Id.* at 604–05.

Contrary to appellants' argument, our decision does not contravene the public policy mandates of uninsured motorist coverage as set forth in Minn.Stat. §§ 65B.42(1), .49, subd. 3a. *See Kaysen v. Fed. Ins. Co.,* 268 N.W.2d 920, 925 (Minn. 1978) (holding that because uninsured coverage offered by terms of insurance policy contravened uninsured coverage required by law, coverage must be inserted by operation of law), *superseded by statute as recognized in Turner v. Mut. Serv. Cas. Ins. Co.,* 663 N.W.2d 36, 40 (Minn.App. 2003) *aff'd,* 675 N.W.2d 622 (Minn.2004). Here, the district court properly concluded that the policy's definition of "motor vehicle" offered broader coverage than the definition in the No–Fault Act, and therefore properly considered whether the farm tractor is a "motor vehicle" under the broader policy terms. *See Krueger v. State Farm Fire & Cas. Co.,* 510 N.W.2d 204, 209 (Minn.App.1993) (stating insurance policies can offer broader coverage than what is statutorily mandated). However, notwithstanding this broader coverage, we nonetheless hold that a farm tractor is not a "motor vehicle" within the meaning of the policy.

### Appellants' Claim Under the Doctrine of Reasonable Expectations

■■■■■ The reasonable-expectations doctrine provides that "the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." *Atwater Creamery Co. v. W. Nat. Mut. Ins. Co.,* 366 N.W.2d 271, 277 (Minn. 1985) (quotation omitted). "The doctrine does not remove from the insured the responsibility to read the policy but at the same time does not hold the insured to an unreasonable level of understanding of the policy." *Hubred v. Control Data Corp.,* 442 N.W.2d 308, 311 (Minn.1989). The Minnesota Supreme Court has declined

to expand the doctrine of reasonable expectations beyond its current use as a tool for resolving ambiguity and for correcting extreme situations like that in *Atwater*, where a party's coverage is significantly different from what the party reasonably believes it has paid for and where the only notice the party has of that difference is in an obscure and unexpected provision.

*Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 49 (Minn.2008). Thus, absent ambiguity in an insurance policy, "[o]nly in exceptional circumstances, when coverage is significantly different than what is reasonably expected and sufficient notice of this difference is lacking, should the reasonable-expectation doctrine apply." *SECURA*, 755 N.W.2d at 323 (citation omitted).

■ Appellants argue that they are entitled to seek uninsured motorist coverage under the reasonable-expectation doctrine. But the policy's definition of "motor vehicle" is not ambiguous. The plain language of the definition states that, to be a "motor vehicle" for purposes of the uninsured motorist coverage section of the policy, a vehicle must be required to be registered under chapter 168 of the Minnesota Statutes and designed for use on public highways. Significantly, this definition is located in the policy's section concerning coverage for uninsured motor vehicles, which is clearly labeled. Thus, this unambiguous definition is neither hidden nor obscure. And, a careful reading of the policy and the clearly referenced statute would put a reasonable person on notice that a farm tractor would not be included in the uninsured motorist coverage section of the policy. In light of the clear policy language defining "motor vehicle" for purposes of uninsured motorist coverage, which is easily located in the relevant section of the policy, the doctrine of reasonable expectations is inapplicable.

Appellants also argue that the reasonableness of their expectations of coverage provided by the policy is a question for a finder of fact. But no evidence in the record establishes an issue of fact regarding whether appellants reasonably believed that the policy's definition included a farm tractor. *See DLH, Inc.*, 566 N.W.2d at 71 (stating no issue of fact exists when party opposing summary judgment presents no evidence that would "permit reasonable persons to draw different conclusions"); *Hubred*, 442 N.W.2d at 311–12 (affirming district court's ruling on summary judgment that doctrine of reasonable expectations was inapplicable where no facts or circumstances justified a reasonable expectation of coverage).

**DECISION**

An uninsured farm tractor is not a "motor vehicle" for purposes of the Minnesota No–Fault Automobile Insurance Act because it is neither subject to registration under chapter 168 of the Minnesota Statutes nor designed for use primarily on the public highways. Additionally, a farm tractor is not a "motor vehicle" under appellants' insurance policy providing a broader definition of "motor vehicle" because a farm tractor is not subject to registration under chapter 168 of the Minnesota Statutes or designed for use on the public highways. Because a farm tractor is not a "motor vehicle" under the Minnesota No–Fault Automobile Insurance Act or appellants' insurance policy with respondent, and because the doctrine of reasonable expectations is inapplicable, the district court did not err in granting summary judgment in favor of respondent.

**Affirmed.**