# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-1714

Twin Cities Metro-Certified Development Company,
Respondent,

vs.

Stewart Title Guaranty Company,
Appellant,

Stewart Title of Minnesota, Inc.,
Defendant.

**Filed August 10, 2015**
**Reversed and remanded**
**Hooten, Judge**

Hennepin County District Court
File No. 27-CV-14-561

Mark E. Duea, Christopher L. Olson, Geck, Duea & Olson, PLLC, White Bear Lake, Minnesota (for respondent)

Brian M. Sund, Eric G. Nasstrom, Ryan R. Dreyer, Morrison Sund PLLC, Minnetonka, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Halbrooks, Judge; and Reilly, Judge.

# S Y L L A B U S

In order to sustain actual loss under a lender's policy of title insurance, an insured junior mortgagee must establish that, given the existence of a senior mortgage, equity remained in the property that secured its loan.

**O P I N I O N**

**HOOTEN**, Judge

On appeal from summary judgment, appellant insurer argues that respondent insured sustained no loss under a lender's title insurance policy and that the district court erred in its interpretation of what constitutes a covered loss under the policy. Because the district court misconstrued the definition of actual loss under the policy, we reverse and remand.

**FACTS**

In October 2007, Red Wing Lodging obtained a $3.8 million loan from lender Prime Security Bank to develop a hotel in Red Wing as part of a loan program run by the United States Small Business Administration. In return, Red Wing Lodging granted a mortgage on its real property in Red Wing (the Property) to Prime Security Bank.

In October 2008, respondent Twin Cities Metro-Certified Development Company (TCM), acting as the loan servicer for the Small Business Administration, loaned Red Wing Lodging $1.5 million in exchange for a mortgage on the Property. This junior mortgage reduced the debt held by Prime Security Bank to $2,376,000. In connection with its mortgage, TCM purchased a title insurance policy from appellant Stewart Title Guaranty Company (Stewart),[1] insuring TCM against "[a]ny defect in or lien or encumbrance" upon its title to the Property. The policy specifically excluded from

---

[1] While there are two Stewart Title companies named as parties in this action, the district court dismissed Stewart Title of Minnesota from this suit, and that ruling was not appealed by TCM. Therefore, "Stewart" will refer to the sole remaining defendant in this action, Stewart Title Guaranty Company.

coverage any "loss or damage" to TCM which arose from Prime Security Bank's prior mortgage.

In June 2009, a construction contractor filed a district court action seeking to foreclose on its previously filed mechanic's lien on the Property. Three other contractors joined the suit, asserting similar mechanics' liens on the Property. Prime Security Bank defended against this action, but TCM was not a party. In August 2010, a district court determined that all of the lien claims were valid and part of a single project that dated back to March 23, 2007, prior to both the Prime Security Bank and TCM mortgages. This district court entered judgments in the total amount of $252,927.07 in favor of the lien claimants. Prime Security Bank then foreclosed on its mortgage and bought the Property at a June 2011 sheriff's sale for $2,462,048.54.

On July 15, 2011, TCM obtained an appraisal that valued the Property at $3.5 million. On December 8, 2011, TCM redeemed[2] the Property from Prime Security Bank for $2,391,551.51 and contemporaneously sold the Property for $3,505,175.62 to a third party. The closing statement for the sale stated that the Property's land and improvements had a value of $2.35 million, with the remaining value of the sale derived from personal property, goodwill, franchise rights, and signage. At the time, more than $1.4 million in principal debt remained on TCM's mortgage on the Property. As part of the transaction, TCM was required to satisfy the outstanding mechanics' lien judgments

---

[2] TCM redeemed the Property under Minn. Stat. § 580.24(a) (2014), which gives junior mortgagees and lienholders a limited period within which to redeem a mortgaged property after the sheriff's sale occurs and the mortgagor's redemption period has expired.

3

in the amount of $265,362.71. In total, TCM claimed that it lost $576,510.01 in connection with its redemption and sale of the Property.[3] In April 2012, counsel for TCM submitted an indemnification claim to Stewart for reimbursement of $265,362.71, plus interest and attorney fees, under the title insurance policy. Stewart denied coverage.

On January 13, 2014, TCM sued Stewart, claiming that Stewart breached the title insurance policy by failing to indemnify TCM for the mechanics' lien judgments that TCM had to satisfy before selling the Property. The parties brought cross-motions for summary judgment, and the district court granted partial summary judgment in favor of TCM. The district court concluded that TCM had suffered a covered loss under the title insurance policy as a result of the liability resulting from the mechanics' liens. Stewart later stipulated to the dismissal of its remaining defenses regarding the circumstances of TCM's claim notice to Stewart, and the district court entered judgment in the amount of $360,833.22 in favor of TCM, which included the amount of mechanics' liens plus prejudgment interest and attorney fees. This appeal followed.

**ISSUES**

I.      Did the district court err by concluding that TCM suffered a covered loss under the title insurance policy and by granting partial summary judgment in its favor?

---

[3] Based upon the district court's findings, TCM suffered this net loss according to the following calculation:

```
 $3,505,175.62  sale price of the Property
-$2,391,551.51  amount TCM paid to redeem the Property
-$  265,362.71  satisfaction of mechanics' lien judgments
-$1,424,771.41  outstanding debt on TCM's mortgage of the Property
  ($576,510.01) net loss claimed by TCM
```

4

II.    Are there any remaining genuine issues of material fact?

**ANALYSIS**

On appeal, Stewart challenges the district court's grant of partial summary judgment in favor of TCM. "We review a district court's grant of summary judgment de novo to determine whether any genuine issue of material fact exists and whether the district court erred in applying the law." *Larson v. Nw. Mut. Life Ins. Co.*, 855 N.W.2d 293, 299 (Minn. 2014). In conducting our review, we view the evidence in the light most favorable to the nonmoving party. *Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.*, 819 N.W.2d 602, 610 (Minn. 2012). "If issues of fact exist, the fact that the parties have brought cross motions for summary judgment will not obviate the need for trial of the factual questions." *St. Paul Fire & Marine Ins. Co. v. Nat'l Comput. Sys., Inc.*, 490 N.W.2d 626, 630 (Minn. App. 1992), *review denied* (Minn. Nov. 17, 1992).

**I.**

Stewart's primary argument on appeal is that the district court erred in determining that TCM suffered an insured loss under the terms of the title insurance policy. We interpret insurance contracts de novo, including the issue of whether provisions in a policy are ambiguous. *Latterell v. Progressive N. Ins. Co.*, 801 N.W.2d 917, 920 (Minn. 2011). An insurance policy provision is ambiguous only when it is "reasonably subject to more than one interpretation," and we interpret unambiguous policy language "in accordance with its plain and ordinary meaning." *Id.* (quotations omitted). Any ambiguities in the policy are construed in favor of the insured. *Evelyn I. Rechtzigel Trust ex rel. Rechtzigel v. Fid. Nat'l Title Ins. Co.*, 748 N.W.2d 312, 316 (Minn. App. 2008),

5

*review denied* (Minn. July 15, 2008). In a suit asserting the breach of a policy, "the insured bears the initial burden of demonstrating coverage, [but] the insurer carries the burden of establishing the applicability of exclusions." *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006). "Insurance contract exclusions are construed narrowly and strictly against the insurer." *Id.*

The district court concluded, and the parties appear to agree, that the first-in-priority mechanics' liens that encumbered the Property were a risk covered by the policy. The lender's title insurance policy here insured TCM "against loss or damage . . . sustained or incurred by the insured by reason of . . . [t]he lack of priority of the lien of the Insured Mortgage upon the Title over any other lien or encumbrance." Because the mechanics' liens had priority over, and thus encumbered, the title of the Property, the liens were a risk insured against by the policy.

However, title insurance "does not guarantee that the covered condition does not exist," but rather serves to "indemnify the insured if the insured suffers any *damages* as a result of the condition." *Mattson Ridge, LLC v. Clear Rock Title, LLP*, 824 N.W.2d 622, 631 (Minn. 2012) (emphasis added); *see also Gibraltar Sav. v. Commonwealth Land Title Ins. Co.*, 905 F.2d 1203, 1205 (8th Cir. 1990) ("A title policy is a contract of indemnity, not of guaranty, and provides reimbursement for actual loss only." (quotation omitted)). By issuing a title insurance policy, the insurer agrees "to indemnify the insured up to a specified amount against loss caused by encumbrances upon or defects in the title to real property in which the insured has an interest." 1 Joyce Palomar, *Title Ins. Law* § 1:8, at 22 (2014–15 ed.). Here, the policy states that it "is a contract of indemnity against *actual*

6

*monetary loss or damage* sustained or incurred by [TCM] who has suffered loss or damage *by reason of matters insured against by this policy.*" (Emphasis added.) Accordingly, TCM will succeed on its coverage claim only if it suffered an actual loss caused by a covered risk—the mechanics' liens. The policy further limits this actual loss to "the least of" (1) the amount of insurance, (2) the amount of debt secured by the mortgage, or (3) "the difference in value of the Title as insured and the value of the Title subject to the risk insured against by this policy." This third clause controls the amount of actual loss in this case, as neither party contends that the financial impact of the mechanics' liens on the value of the Property is greater than the amount of insurance or mortgage debt.

Accordingly, it is crucial in this case to explain the difference in actual loss under a title insurance policy purchased by the *mortgagee* of a property, like TCM, as opposed to a title insurance policy purchased by the *owner* of a property. Under an owner's policy of title insurance, the actual loss of the insured is simply "the difference in value of *the [p]roperty* as insured and its value without the defect in the title." *Mattson Ridge*, 824 N.W.2d at 633 (emphasis added). This is because "[t]he fee interest of an owner is immediately diminished by [the] presence of [a] lien since resale value will always reflect the cost of removing the lien." *Blackhawk Prod. Credit Ass'n v. Chi. Title Ins. Co.*, 423 N.W.2d 521, 525 (Wis. 1988).

Citing *Mattson Ridge*, TCM urges that we affirm the district court's calculation that TCM suffered a loss of $265,361.71, which was the amount that the Property was devalued by the mechanics' liens. If TCM had been the Property's *owner* and had

7

purchased an *owner's* title insurance policy from Stewart, this actual loss calculation would be correct; TCM would have suffered an actual loss under such a policy as soon as the mechanics' liens attached to the Property.

But, as straightforward as that analysis would be, it is incorrect in this case. The formula provided in *Mattson Ridge* does not apply here because TCM is a *mortgagee* insured by a *lender's* title insurance policy. A mortgagee suffers actual loss under a lender's title insurance policy only to "the extent to which the insured debt is not repaid because the value of security property is diminished or impaired by outstanding lien encumbrances or title defects covered by the title insurance." *Cale v. Transamerica Title Ins.*, 275 Cal. Rptr. 107, 109 (Cal. Ct. App. 1990); *see also* 11 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 159:6 (3d ed. 2005) ("[T]he insured under such a policy incurs loss only if the security for the loan proves inadequate to pay off the underlying insured debt due to the presence of undisclosed defects."). To recover for actual loss, TCM needed to show not only that the Property was devalued due to the mechanics' liens, but also that such a loss of value actually reduced the *equity* that TCM was able to recover from the Property in satisfaction of its mortgage.

Ascertaining whether an actual loss occurred in this case is further complicated by the fact that TCM was not the only mortgagee that became subject to the mechanics' liens. TCM's mortgage was junior to Prime Security Bank's mortgage interest of $2.39 million, and the policy specifically excludes from coverage any losses or damages "which arise by reason of" Prime Security Bank's prior mortgage or from "[d]efects, liens, encumbrances, adverse claims or other matters . . . resulting in no loss or damage to

8

the Insured Claimant." The question we must resolve is whether the superior interest of the Prime Security Bank mortgage, independent of the mechanics' liens, could preclude TCM from suffering any "actual monetary loss or damage" due to the encumbrance of the mechanics' liens.

TCM urges us to follow the reasoning of the district court, which concluded that whether the Prime Security Bank mortgage subsumed the equitable value of the Property is irrelevant under the policy, as "TCM experience[d] a loss . . . because of the insured mechanics' liens[,] not because of the uninsured [Prime Security Bank] mortgage." Stewart, on the other hand, argues that the calculation of actual loss begins and ends with the Prime Security Bank mortgage that "consumed all of the . . . Property's equity," leaving no equity in the Property for TCM to lose as a result of the mechanics' liens. This appears to be an issue of first impression in Minnesota. Accordingly we "may also look for guidance from foreign jurisdictions that have addressed the issue." *Swanson v. Swanson*, 856 N.W.2d 705, 708 (Minn. App. 2014).

The weight of relevant authorities supports Stewart's argument that TCM can only recover under the policy if, when calculating the value of the mortgage *without* accounting for the mechanics' liens, the value of the property exceeded the uninsured-against senior mortgage of Prime Security Bank so that the TCM mortgage remained secured by some amount of equity. As explained by the Wisconsin Supreme Court:

> If the interest held by [the insured] was valueless without the superior lien, it cannot claim any lost value because the lien existed. Conversely, if the security interest held by [the insured] had established value, the greatest amount it can recover as a mortgagee for the title defect under its policy of

9

> title insurance is the value of the interest held in the land up to the stated policy limits of the insurance.

*Blackhawk Prod. Credit Ass'n*, 423 N.W.2d at 526. The Wisconsin Supreme Court applied this formula because a junior mortgagee, like TCM, "has as security for its mortgage only the mortgagor's equity, the value of the mortgage[d] property in excess of the amount of the first mortgage." *Id.*; *see also Karl v. Commonwealth Land Title Ins. Co.*, 24 Cal. Rptr. 2d 912, 920 (Cal. Ct. App. 1993) ("Thus, [Lender] cannot make [insurer] pay for his bad investment judgment in securing his loan with a hovel whose value would not satisfy even the first lien." (quotation omitted)), *review denied* (Cal. Mar. 17, 1994); V. Woerner, Annotation, *Measure, Extent, or Amount of Recovery on Policy of Title Insurance*, 60 A.L.R.2d 972, 996–98 (1958) (providing this rule and collecting cases).

We hold that, in order for a junior mortgagee to sustain an actual loss under a policy of lender's title insurance, the junior mortgagee must retain equity in the mortgaged property notwithstanding any defects in title covered by the policy. If the junior mortgagee has already lost all equity in its property due to the presence of a senior mortgagee or lienholder whose interest is excluded under the title insurance policy, the junior mortgagee does not then suffer an actual loss when a covered title defect further reduces the property's value. In sum, because the title insurance policy insures the repayment of the insured's debt, the insured cannot suffer a loss if repayment of that debt is already impossible due to a superior, excluded mortgage or lien that subsumes any

10

equity that would otherwise be utilized to satisfy, in part or in whole, the insured's mortgage.

Applying this interpretation of the policy and viewing the facts in the light most favorable to Stewart, the value of the Property was $2.35 million, as represented in the December 2011 sale documents. Prime Security Bank's mortgage interest was $2.39 million, as this was the amount TCM paid to redeem the Property. Under this set of facts, no equity remained in the Property to secure TCM's mortgage after Prime Security Bank foreclosed its mortgage. Because the Property no longer held any remaining value with which to satisfy that mortgage, it made no difference for the purpose of calculating actual loss whether the Property was further encumbered by $265,362.71 in superior mechanics' liens; TCM had no remaining equity to "lose" as the result of those liens and therefore did not sustain an actual loss covered by the policy.

We conclude that the district court erred in its interpretation of the policy and, to the extent that the district court's grant of partial summary judgment in favor of TCM was predicated upon this erroneous interpretation, we reverse the judgment.

## II.

Stewart further contends that we should direct the district court to grant summary judgment in its favor. Stewart argued to the district court that the Property was valued at $2.35 million, relying on the December 2011 sales documents which allocated that amount as the price of the land and buildings on the Property. TCM argued that the Property should be valued at $3.5 million, and it asserts on appeal that it provided the district court with evidence sufficient to establish a genuine issue of material fact

11

regarding the Property's value, which included a July 15, 2011 appraisal that indicated that the Property was worth $3.5 million and an affidavit from a TCM loan servicing officer noting that TCM had obtained this appraisal. Stewart claims that these documents are insufficient to raise a genuine issue of material fact because they constitute inadmissible hearsay and lack foundational reliability and proper authentication.

"Evidence offered to support or defeat a motion for summary judgment must be such evidence as would be admissible at trial." *Hopkins by LaFontaine v. Empire Fire & Marine Ins. Co.*, 474 N.W.2d 209, 212 (Minn. App. 1991). Ordinarily, we would review the district court's evidentiary ruling on admissibility for an abuse of discretion. *Doe v. Archdiocese of St. Paul*, 817 N.W.2d 150, 164 (Minn. 2012). However, we are without the benefit of a district court ruling on the admissibility of these documents or its ruling on whether this evidence was sufficient to raise a genuine issue of material fact, as resolution of these issues was unnecessary to the district court's summary judgment analysis. While the district court used Stewart's proposed value for the Property in its analysis, the district court noted that it accepted Stewart's valuation "[b]ecause it d[id] not change the outcome of this case" under the district court's calculation of actual loss under the policy.

But, because we now hold that actual loss under a lender's title insurance policy requires there to be equity in the property securing the subject mortgage, the resolution of this case now hinges on the determination of whether there was remaining equity in the Property after the satisfaction of Prime Security Bank's mortgage interest. If TCM is able to establish that the Property's value was greater than Prime Security Bank's

mortgage interest, independent of the mechanics' liens on the Property, it will have suffered actual loss under the policy to the extent that the mechanics' liens reduced that equity amount and accordingly reduced the satisfaction of TCM's mortgage debt. *See Blackhawk Prod. Credit Ass'n*, 423 N.W.2d at 526.

"[A] reviewing court generally may consider only those issues that the record shows were presented to *and considered by* the [district] court." *Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 673 (Minn. 2001) (emphasis added). Because Stewart's evidentiary challenges were not addressed by the district court, we remand for further proceedings, which may include the district court's ruling on these disputed evidentiary issues and a determination of whether there are any genuine issues of material fact requiring resolution by trial. [4]

## DECISION

The district court erred in its interpretation of the lender's title insurance policy and its conclusion that TCM was entitled to recovery under the policy as a matter of law. Accordingly, we reverse the district court's grant of partial summary judgment in favor of TCM and remand the case for further proceedings consistent with this decision.

**Reversed and remanded.**

---

[4] We give no opinion on how the Property should be valued, given that the parties did not argue or brief that issue before this court.