*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1273**

2700 Hennepin LLC,
Respondent,

vs.

VPC Minneapolis Uptown Pizza, LLC,
Defendant,

VPC Pizza Operating Corp.,
Appellant.

**Filed June 3, 2024
Affirmed
Bjorkman, Judge**

Hennepin County District Court
File No. 27-CV-20-10596

Mark R. Bradford, Elizabeth Euller, Bradford Andresen Norrie & Camarotto, Bloomington, Minnesota; and

Kyle S. Willems, Jessica L. Kometz, Bassford Remele, P.A., Minneapolis, Minnesota (for respondent/cross-appellant 2700 Hennepin, LLC)

Robert J. Shainess, Monica L. Davies, Capstone Law, LLC, Edina, Minnesota (for appellant/cross-respondent VPC Pizza Operating Corp.)

        Considered and decided by Bjorkman, Presiding Judge; Smith, Tracy M., Judge; and Slieter, Judge.

**BJORKMAN**, Judge

Appellant-lease guarantor challenges the district court's award of attorney fees to respondent-landlord, arguing that the district court erred in concluding that a liability-limitation provision in the guaranty does not limit guarantor's obligation to pay landlord's attorney fees. By notice of related appeal, landlord challenges the district court's grant of partial summary judgment determining that the liability-limitation provision applies to guarantor's obligation for defendant-tenant's unpaid rent. We affirm.

## FACTS

Respondent 2700 Hennepin LLC (landlord) owns commercial property at 2700 Hennepin Avenue South in Minneapolis. Pursuant to a July 2014 lease agreement, landlord leased 4,025 square feet of that property (the premises) to VPC Minneapolis Uptown Pizza LLC (tenant) for purposes of operating a pizza restaurant, for a ten-year term starting on January 1, 2015. In relevant part, the lease requires tenant to maintain various types of insurance policies and to name landlord as "an additional insured or loss payee" on each policy. The lease also requires a guaranty in favor of landlord, which appellant VPC Pizza Operating Corp. (guarantor), tenant's parent company, provided.

The guaranty, which is the focus of this appeal, provides, in relevant part:

> 1. Guarantor does hereby absolutely, unconditionally and irrevocably guarantee to Landlord (i) the full and complete performance of all of Tenant's covenants and obligations under the Lease, including any amendment, modification, extension, renewal or holdover thereof, (ii) the full payment by Tenant when due of all rent (whether classified as base rent, additional rent, or any other designation) and costs and all other charges

and amounts required to be paid by Tenant under the Lease, and (iii) the full and timely performance of any other instruments securing the payment or performance of the Lease.

2. Guarantor guarantees payment of all of Landlord's expenses, including without limitation, reasonable attorney fees and costs, incurred in enforcing the obligations of Tenant under the Lease or any other instrument securing the Lease, or incurred in enforcing this Guaranty.

. . . .

15. Notwithstanding anything to the contrary contained herein, in the event (a) Tenant has not been in default under the terms of the Lease beyond any applicable notice or cure period at any time during the twelve (12) month period prior to the first thirty-six (36) full calendar months of the Lease Term, and (b) Tenant is not then in default beyond any applicable notice and cure periods as of the last day of the thirty-six (36) full calendar month of the Lease Term, then, from and after the first day of the thirty-seventh (37th) full calendar month of the Lease Term, the liability of Guarantor shall be limited to an amount equal to all Base Rent and Additional Rent payable by Tenant to Landlord under the Lease for the twelve (12) full calendar months following any Tenant Default.

Tenant operated its pizza restaurant until spring 2020. On April 7, landlord provided tenant a default notice, alleging nonpayment of rent. In late May, during the civil unrest following the murder of George Floyd, the premises were significantly damaged. Shortly thereafter, tenant vacated the premises. And on June 18, tenant told landlord that it was closing the restaurant permanently.

The following month, landlord initiated this action against tenant and guarantor. In relevant part, landlord alleged that tenant breached the lease by failing to pay rent and guarantor breached the guaranty by not fulfilling tenant's obligation to pay rent. Landlord sought to recover damages, costs, and attorney fees.

3

The parties brought cross-motions for partial summary judgment regarding the applicability of section 15 of the guaranty, the liability-limitation provision. Guarantor argued that no default occurred before the alleged 2020 rent default. As supporting evidence, guarantor submitted the declaration of its chief financial officer stating: "Tenant denies that it ever defaulted under the Lease before or during the first 36-months of the Lease term, which ran from January 1, 2015 through December 31, 2017. Landlord never notified Tenant or Guarantor of any alleged or claimed default under the Lease during that period."

In response, landlord asserted that tenant had committed various earlier, non-rent defaults, including that tenant was in default "at the outset of the Lease" because it failed to name landlord as an additional insured "under its commercial general liability and umbrella insurance policies" as the lease requires. To show noncompliance with the insurance requirement, landlord submitted an April 2021 letter from one of tenant's insurers, Liberty Mutual Fire Insurance Company (Liberty Mutual), denying landlord's claim to recover the costs it incurred in repairing the damage to the premises that occurred during the May 2020 civil unrest. The letter states that tenant's policy in effect at the time of the damage does not list landlord as a named or additional named insured and "no such request was made by [tenant] to include [landlord] as a named or additional insured."

Guarantor countered that the Liberty Mutual letter does not show that tenant was in default for purposes of section 15, because (1) notice of failure to comply with a lease condition is a prerequisite to a default, and landlord failed to provide such notice within the first 36 months of the lease term; (2) landlord has always been named as an additional

4

insured on tenant's insurance, as demonstrated by certificates of liability insurance for 2015 to 2021 and a February 2015 email from landlord approving that "everything looks good" based on that year's insurance certificate; (3) the Liberty Mutual letter is inadmissible hearsay; and (4) the Liberty Mutual letter is irrelevant to section 15 because it concerns only tenant's 2020 insurance policy.

The district court granted guarantor's motion, reasoning that the Liberty Mutual letter, which denied a claim under the policy in effect in 2020, "has no bearing on whether [tenant] had named [landlord] as an additional insured during the critical first thirty-six months of the Lease Term" and, therefore, landlord "has not proven" that tenant was in default "with respect to the insurance requirement." The court did not address guarantor's other arguments.[1]

The case proceeded to trial. The jury found that tenant breached the lease by failing to pay rent, causing landlord $743,169.36 in damages. In light of the district court's earlier ruling regarding section 15, the jury also answered a special verdict as to the amount of rent tenant failed to pay to landlord for the 12 months following its default; the jury responded: $322,314.46. The district court ordered entry of judgment jointly against tenant and guarantor for that limited amount.

---

[1] Approximately eight months after the district court granted partial summary judgment (and less than three weeks before the scheduled jury trial), landlord asked the district court for leave to bring a motion for reconsideration, pointing to insurance evidence it obtained six months after the summary-judgment order was filed. Guarantor opposed the request as untimely, and the district court denied it.

Thereafter, landlord sought to recover attorney fees under section 2 of the guaranty. Guarantor argued that section 15 caps its liability at 12 months' rent and therefore precludes recovery of attorney fees. The district court disagreed and awarded landlord attorney fees totaling $269,321.83.

Guarantor appeals the attorney-fee award. Landlord filed a notice of related appeal challenging the partial summary judgment.[2]

**DECISION**

Guarantor's direct appeal challenges the district court's interpretation of section 15 of the guaranty, while landlord's related appeal challenges the district court's summary-judgment determination that section 15 applies. We turn first to the threshold issue of applicability.

**I. Section 15's limitation of liability applies because tenant was not in default during the first 36 months of the lease term.**

Summary judgment is proper if the moving party shows that "there is no genuine issue as to any material fact" and it is "entitled to judgment as a matter of law." Minn. R. Civ. P. 56.01. A genuine fact issue exists if a rational trier of fact, considering the record as a whole, could find for the nonmoving party. *Frieler v. Carlson Mktg. Grp., Inc.*, 751 N.W.2d 558, 564 (Minn. 2008).

On appeal from summary judgment, we review de novo whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *Henry v. Indep. Sch. Dist. No. 625*, 988 N.W.2d 868, 880 (Minn. 2023). In doing so,

---

[2] Tenant is not participating in this appeal.

6

we look to the evidence and arguments before the district court at the time of the summary-judgment motion. *See Wall v. Fairview Hosp. & Healthcare Servs.*, 584 N.W.2d 395, 404 (Minn. 1998) ("If the record were to remain open after summary judgment, a ruling on a pretrial summary judgment motion would be subject to continued changes throughout the course of litigation as new evidence was discovered and submitted."); *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that an appellate court generally considers "only those issues that the record shows were presented and considered by the trial court in deciding the matter before it" (quotation omitted)). And we view the evidence "in the light most favorable to the party against whom the motion was granted." *SVAP III Riverdale Commons LLC v. Coon Rapids Gyms, LLC*, 967 N.W.2d 81, 84 (Minn. App. 2021).

Landlord argues that the district court erred by determining section 15 of the guaranty applies as a matter of law because guarantor has the burden to present evidence that tenant was not in default of its obligations during the first 36 months of the lease, and guarantor did not do so. Landlord specifically argues that guarantor did not make a prima facie showing that tenant complied with the requirement to name landlord as an additional insured on its property-insurance policies during that time frame. In the alternative, landlord contends that genuine issues of material fact preclude summary judgment on this issue. Neither argument persuades us to reverse.

Landlord is correct that a party seeking summary judgment bears the burden of making a prima facie showing that there is no genuine issue of material fact. *Citizens State Bank Norwood Young Am. v. Brown*, 849 N.W.2d 55, 62 (Minn. 2014); *see* Minn. R. Civ. P. 56.03(a) (stating that party claiming no genuine fact issue "must support the assertion"

with admissible evidence). But when the moving party makes that showing, "the burden of establishing that the facts raise a genuine issue falls to the opposing party." *Citizens State Bank*, 849 N.W.2d at 62 (citing *Thiele*, 425 N.W.2d at 583). To meet its burden, the nonmoving party may not "rely upon speculation." *Limberg v. Mitchell*, 834 N.W.2d 211, 219 (Minn. App. 2013) (quotation omitted). Rather, it must produce competent, admissible evidence that creates a genuine issue for trial. *Twin Cities Metro-Certified Dev. Co. v. Stewart Title Guar. Co.*, 868 N.W.2d 713, 720 (Minn. App. 2015). And if the nonmoving party believes that additional discovery is necessary to present facts in opposition to summary judgment, it must present an affidavit to that effect to the district court. Minn. R. Civ. P. 56.04.

As the moving party, guarantor was required to make a prima facie showing that tenant was not in default during the 36-month time frame specified in section 15. It did so. Guarantor presented a declaration stating that tenant was not in default and had not received notice that it was in default during that time frame.

Landlord did not then carry its burden. In its memorandum opposing summary judgment, landlord asserted that tenant was, in fact, in default for failing to name landlord as an additional insured on its insurance policies. As support, landlord pointed solely to the 2021 Liberty Mutual letter, arguing that it evinces tenant's failure, from the beginning of the lease term, to include landlord as an additional insured under its *liability* insurance policies. Landlord referred expressly and repeatedly to *liability* insurance throughout its memorandum; landlord made only a single statement discernible as a reference to property insurance. Guarantor responded by submitting certificates of liability insurance dating

8

back to 2015 that indicate landlord is an additional insured and an email showing landlord approved the insurance certificates tenant provided at the beginning of the lease term. Notably, landlord did not argue that (1) the certificates of insurance were irrelevant to its default allegation because they addressed liability, not property, insurance; (2) guarantor should present evidence as to its property insurance; or (3) further discovery was needed to respond to guarantor's summary-judgment motion.

We agree with the district court that this record presents no genuine fact issue with respect to section 15's applicability. The Liberty Mutual letter concerns a claim under a policy in effect from October 2019 to October 2020. The fact that the policy referenced in the letter did not include landlord as an additional named insured at that time does not mean tenant's insurance policies during the first 36 months of the lease term did not comply with the lease. It is plausible, as landlord notes, that tenant carried insurance that did not include landlord as an additional insured throughout the lease term. But the letter from Liberty Mutual is not competent evidence that tenant did so. A party cannot defeat summary judgment by speculating about or assuming facts. This is particularly so when, as here, the nonmoving party could have but did not obtain and submit records that would definitively resolve the issue. Even viewing the Liberty Mutual letter in the light most favorable to landlord, it cannot say more than it does—that landlord was not an additional named insured for property coverage in 2020. Accordingly, the Liberty Mutual letter does not create a genuine fact issue as to noncompliance with the insurance requirements during the first 36 months of the lease, and guarantor is entitled to a summary adjudication that section 15's limitation of liability applies.

**II.    Section 15 does not limit guarantor's obligation to pay attorney fees.**

Guarantor's argument regarding attorney fees turns on the interpretation of the language of the guaranty.[3]  Contract interpretation presents a question of law, which we review de novo.  *Glacier Park Iron Ore Props., LLC v. U.S. Steel Corp.*, 961 N.W.2d 766, 769 (Minn. 2021).  Our goal in interpreting a contract is to enforce the parties' intent.  *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004).  To discern that intent, we look to the language of the contract as a whole and "attempt to harmonize all of its clauses," *Storms, Inc. v. Mathy Constr. Co.*, 883 N.W.2d 772, 776 (Minn. 2016), but we "will not construe the terms so as to lead to a harsh and absurd result," *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998).  If the language of the contract is unambiguous, "the plain and ordinary meaning of the contract language controls."  *Linn v. BCBSM, Inc.*, 905 N.W.2d 497, 504 (Minn. 2018) (quotation omitted).

We begin by noting that the guaranty imposes two distinct obligations on guarantor. First, section 1 obligates guarantor to "guarantee to Landlord (i) the full and complete performance of all Tenant's covenants and obligations under the Lease . . . [and] (ii) the full payment by Tenant when due of all rent."  Second, section 2 obligates guarantor to "guarantee payment of all of Landlord's expenses, including . . . reasonable attorney fees . . . incurred in enforcing the obligations of Tenant under the Lease . . . or incurred in enforcing this Guaranty."  In other words, the guaranty requires guarantor both to stand in tenant's shoes vis-à-vis tenant's lease obligations to landlord and, separately, to reimburse

---

[3] Guarantor challenges only the contractual basis for the attorney-fee award; it does not challenge the amount of the award.

landlord for its enforcement expenses. And guarantor's additional obligation under section 2 arises only if guarantor does not fulfill its obligation under section 1 and landlord incurs resulting litigation expenses. With the distinction between these two obligations in mind, we turn to the parties' arguments regarding section 15.

As set forth above, section 15 provides: "Notwithstanding anything to the contrary contained herein, [absent a qualifying default by tenant], the liability of Guarantor shall be limited to an amount equal to [12 months' rent] following any Tenant Default." By its terms, section 15's application turns on tenant's actions—if tenant committed no acts of default during the first 36 months of the lease, guarantor's liability for any subsequent default is limited to 12 months' rent. Nothing in section 15 references landlord's conduct, including any efforts to enforce its rights under the lease or guaranty.

The parties dispute whether the term "liability" encompasses all of guarantor's financial obligations under the guaranty, including an award of attorney fees under section 2. Both cite caselaw in support of their definitions of "liability" but agree that no case is directly on point and that the language of the guaranty itself best indicates what the parties intended that term to mean. Based on our review of that language, we are convinced that the parties intended "liability" under section 15 to mean solely guarantor's obligations under section 1 for tenant's unfulfilled obligations to landlord under the lease. Because landlord's entitlement to attorney fees flows from a different source—guarantor's separate obligation under section 2 to reimburse landlord for its own actions to enforce the lease and guaranty—it is not a "liability" subject to the section 15 limitation.

11

Two aspects of section 15 guide our analysis. First, section 15 defines guarantor's limited liability in terms of rent, which is consistent with the parameters of section 1. Section 1 obligates guarantor to guarantee tenant's performance of its obligations under the lease, one of which concerns the payment of rent—"whether classified as base rent, additional rent, or any other designation." Section 15 limits guarantor's potential liability "to an amount equal to all Base Rent and Additional Rent . . . for the twelve (12) calendar months following any Tenant Default." Section 2's provision for reasonable attorney fees contains no such parallel language.

Second, section 15 is framed in terms of tenant's obligations under the lease, which also is like section 1 and unlike section 2. Section 15 limits guarantor's liability to 12 months' "Base Rent and Additional Rent payable by Tenant to Landlord under the Lease." Section 1 similarly refers repeatedly to satisfaction of tenant's obligations. These provisions require guarantor to satisfy tenant's obligations if tenant does not. By contrast, section 2 imposes an obligation directly on guarantor to pay landlord's expenses "incurred in enforcing th[e] Guaranty."

To persuade us otherwise, guarantor asserts that reading section 15 as not limiting attorney fees would lead to an absurd result because it would permit landlord to seek future relief against tenant for its ongoing rent default and recover attorney fees from guarantor even if guarantor already paid the amount specified in section 15. We disagree that such a result is absurd. Section 2 plainly provides that guarantor will pay landlord's attorney fees incurred in enforcing tenant's obligations under the lease. Just because landlord cannot recover anything further from guarantor to satisfy tenant's obligations does not mean that

12

it is absurd to hold guarantor to its commitment to pay for the costs of the enforcement action against tenant, including attorney fees.

In sum, the plain language of the guaranty demonstrates that the parties intended to treat guarantor's "liability" and its obligation to pay attorney fees separately, with section 15 only applying to limit guarantor's liability in certain circumstances but not its obligation to pay landlord's attorney fees. As such, the district court did not err by awarding landlord attorney fees based on the guaranty.

**Affirmed.**